**Donald Eugene LOESCHE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4443.**

Supreme Court of Alaska.

Oct. 31, 1980.

648

James D. Oswald and Sue Ellen Tatter, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

Bill D. Murphree, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE, and MATTHEWS, JJ., and CRASKE, Judge.

## OPINION

CONNOR, Justice.

Donald Loesche was indicted in April, 1978, for shooting with intent to kill, wound or maim. AS 11.15.150. After trial by jury, Loesche was convicted of assault with a dangerous weapon. AS 11.15.220. The defendant appeals this conviction, contending that the trial court erred in allowing his estranged wife to testify against him; that the court erred in refusing to allow testimony by the defendant and others concerning specific prior acts of violence committed by the victim; and that the court erred in refusing to give the jury an instruction on careless use of firearms, AS 11.15.200, as a lesser included offense.

Donald and Margaret Loesche were married in 1958. Their marital relationship was a difficult one, and was marked by numerous separations. In 1974 the couple filed for divorce, although they later reconciled their differences. Their most recent separation occurred in February of 1978. In contemplation of divorce, the couple discussed a tentative property settlement agreement with the help of defendant's counsel on the day before the shooting incident in question. The couple signed a separation agreement in May, 1978, a month after the assault.

On the night of April 5, 1978, Donald Loesche went to the house where his wife had been living while separated from him for the previous two months. Proceeding through a back door without knocking, the defendant entered the front room of the house and there encountered his estranged wife and her guest, Joe Burk. What occurred next was the subject of dispute at trial.

Burk, the victim, testified that he was lying on the couch watching television when Loesche burst in and began shooting at him without saying a word. Margaret Loesche, who was the only other eyewitness present, testified against her husband and supported Burk's version of the incident. Donald Loesche claimed that he acted in self-defense and testified that Burk got off the couch in the small front room and advanced at him in a threatening manner saying, "Loesche, you son-of-a-bitch, this is it."

After shooting Burk five times, injuring him seriously, Loesche left the premises. Loesche testified that he believed the victim was dead at this point. Shortly thereafter he surrendered voluntarily to the police.

## I

■■■ Loesche contends that the trial court committed a prejudicial error by allowing his wife to testify against him.[1] He relies on Alaska Rule of Criminal Procedure, Rule 26(b)(2)(i), which was effective at the time of trial,[2] and which provided:

"(i) A husband shall not be examined for or against his wife, without her consent, nor a wife for or against her husband, without his consent."

The trial court invoked its authority under Alaska R.Crim.P. 53[3] to relax the application of the privilege against adverse spousal testimony contained in Criminal Rule 26(b)(2)(i), and allowed Margaret Loesche to willingly testify as a rebuttal witness against her husband.

■■■ We find that the court did not abuse its discretion by making use of Alaska R.Crim.P. 53 to allow the voluntary testimony of Margaret Loesche over her husband's objection. The basic rationale behind the privilege against adverse spousal testimony is the belief that such a rule is necessary to foster family peace. *See Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *Hawkins v. United States*, 358 U.S. 74, 77, 79 S.Ct. 136, 138, 3 L.Ed.2d 125, 128 (1958).[4] When evidence that a marriage is in fact destroyed is as conclusive as it is in the present case, the policy behind the privilege is no longer served by its application. The trial court may properly rule that the state's interest in a spouse's testimony outweighs the defendant spouse's interest in suppressing it. *See United States v. Cameron*, 556 F.2d 752, 756 (5th Cir. 1977); *United States v. Apodaca*, 522 F.2d 568, 571 (10th Cir. 1975); *United States v. Fisher*, 518 F.2d 836, 839–40 (2d Cir. 1975), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975).

The United States Supreme Court used this line of reasoning in holding recently that as a matter of federal common law[5] the privilege of preventing adverse spousal testimony should rest with the witness spouse alone:

1. Loesche also contends that the separate marital confidential communications privilege, Alaska R.Crim.P. 26(b)(2)(ii), was breached during trial by allowing the testimony of his wife concerning an alleged confidential communication. However, the defendant waived his right to rely on this privilege by testifying himself about the conversation in question earlier in the trial. The spouse possessing the confidential communications privilege may always waive it by some act of testimony, which in fairness precludes that person from objecting to further disclosure.

2. Alaska R.Crim.P. 26, which contained both the privilege against adverse spousal testimony, Rule 26(b)(2)(i), and the confidential marital communications privilege, Rule 26(b)(2)(ii), was rescinded by Supreme Court Order No. 369, effective August 1, 1979. The privilege against adverse spousal testimony is now contained in Alaska R.Evid. 505(a), and the confidential marital communications privilege is found at 505(b). The privileges as found in Alaska R.Evid. 505 are substantially the same as those contained in former Alaska R.Crim.P. 26, with the addition of several express provisions setting out circumstances under which the privileges are deemed not to apply.

3. Alaska R.Crim.P. 53 provides:

"These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice."

4. Federal decisions on testimonial privileges are not binding on the states. Nevertheless, since there is no case law in Alaska dealing with this issue, federal experience with the common law development of the privilege is persuasive.

5. One significant difference between the federal rules prior to *Trammel* and the Alaskan version of the privilege, is that the privilege is held by the *defendant* spouse in Alaska, whereas the privilege was held by *both* the defendant spouse and the witness spouse as a matter of federal common law before *Trammel*, 445 U.S. at 43–44, 100 S.Ct. at 909–10, 63 L.Ed.2d at 190–91. Various state versions of the privilege are detailed in *Trammel, id.*, at 48, 100 S.Ct. at 911, 63 L.Ed.2d at 193 n.9.

"When one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace. . . . Accordingly, we conclude that the existing rule should be modified so that the witness spouse alone has a privilege to refuse to testify adversely . . . . This modification . . . furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs." (footnote omitted).

*Trammel v. United States, supra,* 445 U.S. at 52, 100 S.Ct. at 913, 63 L.Ed.2d at 196.

The testimony of Margaret Loesche was also permissible under the "necessity"[6] or "crimes–against–the–other" exception to the privilege, Alaska R.Crim.P. 26(b)(2)(iii).[7] The assault for which the defendant was convicted was a crime against his wife in the sense that he forcibly entered her residence without permission, and surely put her in fear by shooting her guest five times at close range. Because she was physically present she was within the zone of danger, and she could have apprehended violent injury to herself from the attack. *See State v. Thompson,* 564 P.2d 315, 316–18 (Wash. 1977). *See generally* Annot., 36 A.L.R.3d 820 (1970).

## II

■ The trial court refused to permit the defendant and others to testify concerning alleged prior instances of violent conduct committed by the victim which were directed toward third parties. As a general rule of common law, evidence of character is not admissible to show that a person committed an act consistent with that character. *E. g., Galauska v. State,* 527 P.2d 459, 467 (Alaska 1974). However, in trials for homicide or assault where the defendant admits killing or assaulting the victim and puts the issue of self–defense fairly into question, evidence establishing the turbulent or dangerous character of the victim is deemed admissible in many jurisdictions[8] and may be shown by reputation and opinion testimony, and, occasionally, by particular instances of violent conduct.[9] Given the

---

**6.** 8 J. Wigmore, Evidence § 2239 (McNaughton rev. ed. 1961).

**7.** Alaska R.Crim.P. 26(b)(2)(iii) provided:
"(iii) These privileges do not apply to a criminal action or proceeding for a crime committed against the person or property of the other spouse or a child of either, including an action for failure to permit visitation with a minor child."
The exceptions to the privilege against adverse spousal testimony are now set out in Alaska R.Evid. 505(a)(2)(A)–(F).

**8.** At the time of trial, the Alaska Rules of Evidence, which became effective August 1, 1979, were not controlling. In the absence of any express rule governing the admissibility of character evidence in the form of specific acts, Alaska R.Crim.P. 26, which was controlling, provided that the admissibility of such evidence be governed "by the principles of common law as they may be interpreted by the courts of this state in the light of reason and experience."
The relevant provisions from the Alaska Rules of Evidence are nevertheless quoted below to show the approaches we subsequently adopted.

Alaska R.Evid. 404(a) provides in part:
"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
. . . . .
(2) *Character of Victim.* Evidence of a relevant trait of character of a victim of a crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor, subject to the following procedure. . . ."

**9.** *See* 1 J. Wigmore, Evidence § 63, at 198 (3d ed. 1940 & Supp. 1979); 2 J. Wigmore, Evidence §§ 246, 248 (Chadbourne rev. ed. 1979). *See generally* Annot., 1 A.L.R.2d 571 (1965).
Alaska R.Evid. 405 provides:
"(a) *Reputation or Opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation in any community or group in which the individual habitually associated or by testimony in the form of an opinion. On cross-

proper foundation, most of these jurisdictions allow testimony concerning specific instances of the victim's past conduct when it is offered either to corroborate the reasonableness of the defendant's alleged apprehensions of the victim or to corroborate the defendant's self–defense claim by demonstrating the probability that the victim, rather than the defendant, was the actual aggressor. *E. g., United States v. Burks,* 470 F.2d 432, 437 (D.C.Cir. 1972); *see* note 9, *supra. See also Pedersen v. State,* 420 P.2d 327, 336 (Alaska 1966).

The decision of whether to admit such evidence is, however, within the discretion of the trial court and will not be disturbed on appeal unless clearly mistaken. *Lewis v. State,* 469 P.2d 689, 695 (Alaska 1970). In the present case we note that the trial court did allow Loesche to testify about a recent threat the victim had made to him at a local bar, and permitted both Loesche and other competent witnesses, including a state trooper, to testify as to Burk's reputation in the community for violence, the personal opinions of Burk which they held in this regard, and without any details, the bases for their opinions as to Burk's character traits. In view of its capacity to confuse the real issues and consume time,[10] we conclude that the court did not abuse its discretion in refusing to permit testimony of other specific acts of the victim and in limiting character evidence primarily to reputation and opinion testimony.

Moreover, even if we were to find error in the exclusion of the testimony of other specific acts of the victim, we would find such error to be harmless because there was not sufficient evidence to justify a self–defense instruction. *McMahan v. State,* 617 P.2d 494, at 501 (Alaska 1980). In *Bangs v. State,* 608 P.2d 1 (Alaska 1980), a case wherein the defendant had struggled with the victim, found him to be "physically overpowering," and returned to the altercation scene with a loaded revolver, we held that the defendant was not entitled to an instruction on self-defense. Quoting from *State v. Millett,* 273 A.2d 504, 510 (Me. 1971), we stated:

> "The law of self–defense is designed to afford protection to one who is beset by an aggressor and confronted by a necessity not of his own making."

608 P.2d at 5. *See Castillo v. State,* 614 P.2d 756, 766 (Alaska 1980). In the case at bar, Loesche, while armed made an unconsented and unannounced entry into his estranged wife's house and, taking his version as true, was there confronted by her unarmed boyfriend who advanced toward him uttering some threats. Under those circumstances, Loesche clearly had a duty to retreat and the use of deadly force was unreasonable as a matter of law. *See* Model Penal Code § 3.04(2)(a)(ii) and (b)(ii).

### III

The trial court instructed the jury on the offenses of shooting with intent to kill, wound or maim, AS 11.15.150, and assault with a dangerous weapon, AS 11.15.220. The court, however, refused to instruct on the offense of careless use of firearms, AS

examination, inquiry is allowable into relevant specific instances of conduct.

   (b) *Specific Instances of Conduct.* In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct."

**10.** *See Galauska v. State,* 527 P.2d 459, 468 (Alaska 1974). The notes of the Advisory Committee on the Proposed Rules of Evidence for United States Courts and Magistrates, comment to Fed.R.Evid. 405, 28 U.S.C.A., state that:

"Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time it possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently the rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation and opinion."

11.15.200, as a lesser included offense.[11] The defendant contends this refusal constituted a prejudicial error.

In *Christie v. State*, 580 P.2d 310, 320 (Alaska 1978), we held that the defendant was entitled to an instruction on the lesser included offense of careless use of a firearm when evidence to support a finding of careless use was presented and the defendant was convicted of shooting with intent to kill, wound or maim, and the jury also had been instructed on assault with a dangerous weapon. Applying *Christie*, we recently held in *Elisovsky v. State*, 592 P.2d 1221, 1226 (Alaska 1979), that the trial court erred in refusing to give an instruction on careless use of a firearm when the indictment charging assault with a dangerous weapon was sufficient to notice the crime of careless use, and sufficient evidence was presented at trial indicating that perhaps the defendant committed *only* the lesser offense of careless use.

While *Elisovsky* and *Christie* recognize careless use as a lesser included offense of both shooting with intent to kill, wound or maim, and assault with a dangerous weapon, the cases also acknowledge that evidence from which a jury could find the defendant guilty of the lesser included offense must be presented at trial in order to entitle the defendant to an instruction on the lesser offense. *Elisovsky*, 592 P.2d at 1226; *Christie*, 580 P.2d at 317 & n.22.

In the present case, Loesche testified that he intentionally pointed his firearm and intentionally shot Joe Burk five times. No evidence was offered by Loesche or any other party even tending to suggest that Loesche acted without general intent to harm, the presence of which precludes application of the careless use charge. *Christie*, 580 P.2d at 830 n.29. Since no evidence was introduced suggesting that Loesche acted in jest, or that either the pointing or discharge of the firearm was an accident or done unintentionally, it would not be possible for a jury to find, from the evidence at trial, that he was guilty only of careless use and not assault with a dangerous weapon.[12] This fact distinguishes the present case from *Elisovsky* and *Christie*. The necessary conclusion is that Loesche was not entitled to an instruction on careless use of a firearm under the circumstances of this case.

AFFIRMED.

BOOCHEVER, J., not participating.

---

**11.** We have interpreted AS 11.15.200 as covering three distinct sets of circumstances:

(1) Pointing a firearm at a person intentionally but without malice.

(2) Pointing a firearm at a person intentionally but without malice, followed by an unintentional discharge.

(3) Pointing and discharging a firearm at a person or object without malice, and without knowing the identity of the object, and maiming or injuring a human being.

*Christie v. State*, 580 P.2d 310, 319 (Alaska 1978).

**12.** Counsel for defendant contends that the jury might have found that Loesche lacked the general intent to harm required by AS 11.15.200, because of the emotions aroused by the love relationship between his wife and the victim, of which Loesche was aware. However, the general intent that constitutes the mental component of assault with a dangerous weapon is a general intent to harm or cause fear–the general intent of simple assault at common law. A finding that Loesche was suffering from diminished capacity due to emotional trauma would not affect the determination of whether he acted with general criminal intent. *Mill v. State*, 585 P.2d 546, 551 (Alaska 1978), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979).