NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter.  Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JENNIFER ANDERSON, | |
| Petitioner, | Court of Appeals No. A-12600 |
| | Trial Court No. 3KN-14-665 CR |
| v. | |
| | **O P I N I O N** |
| STATE OF ALASKA, | |
| Respondent. | No. 2629 — December 14, 2018 |

Original Application from the Superior Court, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Andy L. Pevehouse, Gilman & Pevehouse, Kenai, for the Petitioner.  Diane L. Wendlandt, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Respondent.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge. [*]

Judge ALLARD, writing for the Court.
Judge MANNHEIMER, dissenting.


Jennifer Anderson is the wife of Jeremy Anderson, a former high school teacher.  Jeremy Anderson currently stands indicted on multiple counts of first- and

_____

[*]  Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

second-degree sexual abuse of a minor, based on allegations that he had sexual intercourse with one of his students, fifteen-year-old K.H., over the span of four months.

Mrs. Anderson has asserted her spousal immunity privilege not to testify against her husband at his trial.[1] In the proceedings below, the superior court rejected Mrs. Anderson's claim of privilege, concluding that the sexual abuse prosecution against Mr. Anderson fell within one of the codified exceptions to the marital privileges — specifically, the exception codified in Alaska Evidence Rule 505(a)(2)(D)(v) for cases in which one of the spouses is charged with "a crime involving domestic violence as defined in AS 18.66.990."[2]

Mrs. Anderson petitioned this Court to review the superior court's ruling and we accepted the petition as an original application for relief under Alaska Appellate Rule 404. For the reasons explained here, we conclude that the superior court did not err when it rejected Mrs. Anderson's marital privilege claim in this case.

*Background facts*

On May 8, 2014, fifteen-year-old K.H. reported to one of her high school teachers that she had been sexually involved with her music teacher, thirty-six-year-old Jeremy Anderson, since February of that year. The troopers were contacted, and an investigation ensued. Based on the results of that investigation, Anderson was indicted on fourteen counts of first-degree sexual abuse of a minor and two counts of second-degree sexual abuse of a minor.[3]

---

[1]  *See* Alaska Evid. R. 505(a).

[2]  *See also* Alaska Evid. R. 505(b)(2)(A) (applying this same exception to an assertion of the confidential marital communications privilege under Evidence Rule 505(b)).

[3]  *See* AS 11.41.434(a)(3)(B); AS 11.41.436(a)(5)(B).

At the grand jury hearing, K.H. testified regarding the nature and frequency of her sexual encounters with Anderson. K.H. stated that Anderson had started acting flirtatious towards her in December 2013. Anderson's "flirtation" continued, and the pair had sex for the first time in February 2014. K.H. testified that they had sexual intercourse around twenty to thirty times between February 2014 and early May 2014. The sex occurred on school grounds, generally in the choir room closet or the band room closet.[4] Even though K.H. was below the age of sexual consent under Alaska law, she testified that she personally viewed the sex acts as "consensual." She testified that the last time she and Anderson had sex, she told him she did not want to because she felt guilty, but Anderson pressured her to have sex with him despite her initial unwillingness.

During the pretrial proceedings in Jeremy Anderson's case, it became clear that the State intended to introduce various statements that Anderson made to his wife during the course of the investigation.

On the same day that school officials contacted the state troopers, the troopers received a call informing them that a man — later determined to be Jeremy Anderson — was trying to kill himself. The troopers began searching for Mr. Anderson, and ultimately arrested him in his truck. Prior to Anderson's arrest, one of the troopers overheard a cell phone conversation between Anderson and his wife Jennifer. The trooper was able to overhear both sides of the conversation.[5] During that conversation, Anderson made general admissions of wrongdoing.

After arresting Anderson, the troopers discovered a letter addressed to his wife and children in the car. In this letter, Anderson admitted, again in general terms,

---

[4] K.H. also testified that Anderson drove her to a church youth group one time and they kissed in the car, but no direct sexual activity occurred.

[5] It is unclear from the current record whether this was done with Mrs. Anderson's knowledge and permission.

that he had done wrong, and he apologized to his wife for his actions.  Later, a trooper spoke with Jennifer Anderson about this letter.  Mrs. Anderson told the trooper that, aside from this letter, her husband admitted to her that he had engaged in an inappropriate relationship with one of his students — a student named "K."

In the pretrial proceedings, the State indicated that it intended to call Mrs. Anderson as a witness to testify to her husband's admissions of wrongdoing.  The State also indicated that it intended to introduce Mr. Anderson's suicide letter into evidence.

In response, Mr. Anderson asserted his marital communications privilege under Alaska Evidence Rule 505(b) to exclude evidence of any confidential communications between himself and his wife.  In later proceedings before the trial court, Mrs. Anderson also asserted her spousal immunity privilege under Rule 505(a), and she separately asserted her own marital communications privilege under Rule 505(b).

*The two forms of marital privilege recognized under Alaska law*

Alaska law recognizes two marital privileges: the spousal immunity privilege codified in Evidence Rule 505(a), and the marital communications privilege codified in Evidence Rule 505(b).

Evidence Rule 505(a) provides that "a husband shall not be examined for or against his wife, without his consent, nor a wife for or against her husband, without her consent."  This privilege belongs solely to the witness-spouse, and it can only be invoked during the life of the marriage.[6]  Although originally premised on an outmoded jurisprudential theory that a wife has no legal existence separate from her husband, the

---

[6]  *See Arredondo v. State*, 411 P.3d 640, 644 (Alaska App. 2018); Alaska Evid. R. 505(a)(1) cmt. ("If the marriage is a sham or has been terminated by divorce, annulment, or death, there is no privilege.").

more modern understanding of the privilege is that it exists to "promote family peace and harmony" that would otherwise be destroyed by adverse spousal testimony.[7]

Evidence Rule 505(b) provides that a spouse shall "[not] be examined as to any confidential communications made by one spouse to the other during the marriage, without the consent of the other spouse."[8] This privilege may be claimed by either spouse, and it continues to apply even after the marriage has ended (provided that the confidential communications occurred during the marriage).[9] Unlike the spousal immunity privilege, which is concerned with protecting the peace and harmony of a particular marriage, the confidential marital communications privilege is concerned with protecting the sanctity of marriage in general by safeguarding the freedom of spouses to "communicate their deepest feelings to each other without fear of eventual exposure in a court of law."[10]

---

[7] *See Daniels v. State*, 681 P.2d 341, 345 (Alaska App. 1984); *see also Trammel v. United States*, 445 U.S. 40, 44 (1980) (noting that the testimonial privilege derives from two (now outmoded) jurisprudential theses: (1) "the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding," and (2) "the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one").

[8] Alaska Evid. R. 505(b)(1); *see also Salazar v. State*, 559 P.2d 66, 78 (Alaska 1976) (noting that the confidential marital communications privilege "is meant to protect those communications arising between the partners of a marital relationship that are confidential and not as a privilege for all communications").

[9] Alaska Evid. R. 505(b)(1) ("Neither during the marriage nor afterwards shall either spouse be examined as to any confidential communications made by one spouse to the other during the marriage, without the consent of the other spouse."); Alaska Evid. R. 505(b)(1) cmt. ("both spouses are the holders of the privilege and either spouse may claim it").

[10] *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir. 1984).

Both the spousal immunity privilege and the marital communications privilege have been criticized by legal commentators, and both privileges are subject to multiple statutory exceptions under Alaska law.[11] The privileges are purely statutory in nature and neither privilege is absolute.[12] Moreover, because both marital privileges operate to impede the normal truth-seeking function of court proceedings, they must be "strictly construed" by the courts and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."[13]

*The statutory exceptions to the marital privileges in criminal cases*

The Alaska legislature has enacted multiple statutory exceptions to Alaska Evidence Rule 505. Many of these exceptions are specific to criminal proceedings.

---

[11] *See, e.g.*, Alaska Evid. R. 505(a)(2) & (b)(2); AS 47.17.060 (declaring marital privileges inapplicable in all child in need of aid proceedings); *see also* Kenneth S. Broun et al., *McCormick on Evidence* § 86, at 383 (6th ed. 2006) (criticizing the probable benefits of the marital communications privilege in actually encouraging marital confidences and wedded harmony as marginal); 8 John Henry Wigmore, *Evidence in Trials at Common Law*, § 2228, at 221 (McNaughton rev. 1961) (criticizing the spousal immunity privilege as "the merest anachronism in legal theory and an indefensible obstruction to truth in practice").

[12] *See Osborne v. State*, 623 P.2d 784, 787 (Alaska 1981) (approving relaxation of former spousal immunity privilege in the interests of justice under Criminal Rule 53); *Loesche v. State*, 620 P.2d 646, 649 (Alaska 1980); *see also Daniels*, 681 P.2d at 345 (noting that courts have expressed a "general policy to construe the marital privilege narrowly, particularly in cases involving child abuse").

[13] *Daniels*, 681 P.2d at 344 (quoting *Trammel*, 445 U.S. at 50); *see also Osborne*, 623 P.2d at 787 ("Compulsory testimony is the basic norm of our legal system. Correspondingly, testimonial privileges, other than those resting upon a constitutional basis, should be given a fairly narrow scope.").

Evidence Rule 505(a)(2)(D) and Evidence Rule 505(b)(2)(A) prohibit application of either privilege in a criminal proceeding in which one spouse is charged with:

> (i) A crime against the person or the property of the other spouse or of a child of either ...
> (ii) Bigamy, incest, adultery, pimping, or prostitution;
> (iii) A crime related to abandonment of a child or nonsupport of a spouse or child;
> (iv) A crime prior to the marriage; [or]
> (v) A crime involving domestic violence as defined in AS 18.66.990.

These exceptions represent situations in which the legislature has directly determined that society's interest in promoting "family peace and harmony" must give way to society's larger interest in prosecuting certain crimes. Most jurisdictions have codified similar exceptions to their marital privileges.[14] Indeed, virtually every jurisdiction recognizes an exception for crimes committed against a spouse or against the children of either spouse.[15]

Some jurisdictions have also expanded this exception to include an "any child" exception — which means that spouses are precluded from asserting their marital privileges in a prosecution involving sexual abuse of any child, regardless of whether the

---

[14] *See, e.g.*, Ariz. Rev. Stat. Ann. § 13-4062; Cal. Evid. Code §§ 972, 980; D.C. Code §§ 14-306, 22-3024; Fla. Stat. § 90.504; Idaho Code Ann. § 9-203(1); Mass. Gen. Laws ch. 233, § 20; Mich. Comp. Laws § 600.2162(3); Nev. Rev. Stat. § 49.295.

[15] *See* Pamela A. Haun, *The Marital Privilege in the Twenty-First Century*, 32 U. Mem. L. Rev. 137, 163-64, 173 (2001) (noting that "[e]ssentially every state has adopted an exception to the marital privilege in cases where the spouse has committed a crime against the other spouse" and "[n]early every state has similarly adopted an exception in cases where the spouse has committed a crime against a child of either spouse, though some states limit this exception to minor children"); *see also* Me. R. Evid. 504(d)(1)(C) (expanding exception to include "any person residing in either spouse's household").

child is related to either spouse.[16]  These jurisdictions have expressly decided that "[s]ociety's interest in convicting and punishing one who commits child abuse is the same" regardless of whether there is a familial relationship to the child.[17]  Alaska does not have an "any child" exception to its marital privileges.

*The superior court's rulings regarding the marital privileges in this case*

The superior court made two different rulings on the Andersons' assertions of marital privilege in this case.

First, the superior court ruled that the suicide letter could be introduced because it did not qualify as a "confidential" marital communication.  The court noted that the letter included a section addressed to Mrs. Anderson, but it also included sections addressed to "my kids" and "my family."  The court also noted that the letter was left in plain view.  Based on these circumstances, the court concluded that Mr. Anderson did not have a reasonable expectation that the suicide note would only be read by his wife, and the letter therefore did not qualify as a confidential marital communication.[18]

---

[16]  *See, e.g.*, D.C. Code § 22-3024; Mass. Gen. Laws ch. 233, § 20; Mich. Comp. Laws § 600.2162(3); Miss. R. Evid. 504(d)(2)(A); *see also* Naomi Harlin Goodno, *Protecting "Any Child": The Use of the Confidential-Marital-Communications Privilege in Child-Molestation Cases*, 59 U. Kan. L. Rev. 1, 28, 37, n. 110 (2010) (listing states with "any child" exception and noting that some states distinguish child sexual abuse cases from other child abuse cases, while others apply the any child exception to all abuse cases).

[17]  *Villalta v. Com.*, 702 N.E.2d 1148, 1152 (Mass. 1998); *see also United States v. Martinez*, 44 F. Supp.2d 835, 837 (W.D. Tex. 1999) ("[I]n a case where one spouse is accused of abusing minor children, society's interest in the administration of justice far outweighs its interest in protecting whatever harmony or trust may at that point still remain in the marital relationship.").

[18]  *Cf. United States v. Strobehn*, 421 F.3d 1017, 1021 (9th Cir. 2005) (holding that a
(continued...)

Second, the superior court ruled that the "domestic violence" exception applied to this criminal prosecution because the sexual abuse qualified as a "crime of domestic violence" as that term is defined in AS 18.66.990. Alaska Statute 18.66.990(3) defines a crime of domestic violence as including any crime against a person under 11.41 (sexual abuse of a minor qualifies as a crime against a person) if the crime is committed by one "household member" against another "household member." Alaska Statute 18.66.990(5) defines "household member" to include "adults or minors who are dating or who have dated," as well as "adults or minors who are engaged in or who have engaged in a sexual relationship."[19]

Based on K.H.'s grand jury testimony, the superior court ruled that Anderson and K.H. qualified as "household members" under AS 18.66.990(5)(C) and (D) because they had been engaged in a "sexual relationship" and had been "dating" for several months. The court therefore concluded that Mr. Anderson's alleged sexual abuse of his teenage student constituted "crimes of domestic violence" for purposes of precluding the use of either marital privilege at Mr. Anderson's criminal trial.

*Mrs. Anderson's petition for review to this Court*

The superior court's rulings ultimately applied to both Mr. and Mrs. Anderson. But the rulings initially applied only to Mr. Anderson, because he was at first the only spouse asserting a marital privilege. After the superior court rejected Mr.

---

[18] (...continued) defendant's letter that expressly addressed third parties in addition to his wife was not a privileged marital communication); *Ellis v. State*, 570 So.2d 744 (Ala. App. 1990) (holding that a suicide note to a husband discovered by the police who responded to a wife's 911 emergency call did not qualify as a confidential marital communication).

[19] *See* AS 18.66.990(5)(C), (D).

Anderson's confidential marital communications claim of privilege, Mr. Anderson filed a petition for review in this Court, seeking pretrial interlocutory review of the superior court's ruling. This Court declined to exercise our power of discretionary review because the case was pending trial and because Mr. Anderson had adequately preserved the issue for any future appeal should this ruling materially affect the resolution of his criminal case. In denying Mr. Anderson's petition, we expressed no opinion on the merits of the superior court's ruling.

Following our denial of Mr. Anderson's petition for review, Jennifer Anderson filed her own motion in the superior court, asserting her spousal immunity privilege (*i.e.*, her privilege not to be called as a witness in her husband's case) and her marital communications privilege. The superior court rejected Mrs. Anderson's claims of privilege — again ruling that the domestic violence exception applied.

Mrs. Anderson petitioned this Court to review the superior court's rejection of her spousal immunity privilege. Because we recognized that Mrs. Anderson's rights as a witness-spouse could be adversely affected if we denied interlocutory review of her claim, we granted Mrs. Anderson's petition as an original application for relief under Alaska Appellate Rule 404.[20]

*Why we affirm the superior court's ruling that the spousal immunity privilege does not apply to this criminal prosecution*

Whether the domestic violence exception applies under the particular facts of this case is a question of law that we review de novo.[21]

---

[20]    *See Dep't of Pub. Safety v. Superior Court*, 411 P.3d 648, 649 (Alaska App. 2018).

[21]    *See State v. Ketchikan Gateway Borough*, 366 P.3d 86, 90 (Alaska 2016) (internal citations omitted).

The domestic violence exception to the marital privileges was enacted by the Alaska legislature in 1996 as part of a comprehensive revision of Alaska's domestic violence laws.[22] The intended purpose of this 1996 legislation was to provide greater protections to victims of domestic violence and to focus more state resources on domestic violence prevention.[23] To this end, the legislation broadened the definition of "domestic violence" and expanded the categories of persons who would qualify for protection as a victim of domestic violence.[24] Included in these legislative changes was the adoption of the Model Code on Domestic and Family Violence's definition of "household member."[25]

> Under the Model Code, the term "household member" includes:
>
> (a) Adults or minors who are current or former spouses;
>
> (b) Adults or minors who live together or who have lived together;
>
> (c) Adults or minors who are dating or who have dated;
>
> (d) Adults or minors who are engaged in or who have engaged in a sexual relationship;
>
> (e) Adults or minors who are related by blood or adoption;
>
> (f) Adults or minors who are related or formerly related by marriage;

---

[22] *See* SLA 1996, ch. 64 §§ 33, 70; *see also* Governor's Transmittal Letter for House Bill 314, 1996 House Journal 2546-47 (Jan. 26, 1996) (introduced as House Bill 454).

[23] *See* Sponsor Statement of Rep. Sean Parnell for H.B. 314, 19th Legis. (February 12, 1996).

[24] SLA 1996, ch. 64 § 33.

[25] *See* Model Code on Domestic and Family Violence § 215 (Nat'l Council of Juvenile and Family Court Judges 1994), *available at* http://www.ncjfcj.org/resource-library/publications/model-code-domestic-and-family-violence.

(g) Persons who have a child in common; and

(h) Minor children of a person in a relationship that is described in paragraphs (a) through (g).[26]

This definition, with a few minor revisions, is now codified in AS 18.66.990(5).

Alaska's domestic violence exception to the marital privileges is also derived from the Model Code on Domestic and Family Violence.[27] Section 215 of the Model Code provides, in pertinent part:

> Sec. 215. **Spousal privileges inapplicable in criminal proceedings involving domestic or family violence.**
> The following evidentiary privileges do not apply in any criminal proceeding in which a spouse or other family *or household member* is the victim of an alleged crime involving domestic or family violence perpetrated by the other spouse:
> 1. The privilege of confidential communication between spouses.
> 2. The testimonial privilege of spouses.[28]

This exception was therefore intended to apply broadly to crimes outside the traditional intrafamilial domestic violence situation.[29]

The question presented by this case is whether this exception applies to the case at hand, which involves alleged sexual abuse of a minor by a person in a position of authority over the minor. Mrs. Anderson contends that the domestic violence exception should be limited to the "everyday meaning" of domestic violence which she

---

[26]   *Id.* § 102.

[27]   *Id.* § 215.

[28]   *Id.* § 215. (Emphasis added.) We note that this provision was misquoted in the appellate briefing before this Court.

[29]   *See id.* § 102 cmt. (acknowledging that "[t]he definition of family or household member is broad. Cohabitation is not a prerequisite for eligibility; and the relationship between the victim and the perpetrator need not be current.").

defines as "[f]amily or household members [who] have a connection rooted in blood, marriage, family standing, or a chosen romantic relationship."[30]

As a general matter, we agree with Mrs. Anderson that the hallmark of a crime of domestic violence is that it is a crime that is committed within the context of a pre-existing relationship. As we explained in *Bates v. State*:

> the purpose of domestic violence legislation is to protect victims from harm caused by ... persons whose intimate ... relationship to the victim increases the danger of harm, either because the parties live in physical proximity or because the relationship is one whose intimacy may disable the victim from seeking protection.[31]

We disagree, however, with Mrs. Anderson's contention that her husband and K.H. were not engaged in such an intimate relationship.

In *Bates*, we concluded that the term "dating" was properly understood as a requirement that the parties be involved in a "dating *relationship*" — a term which connotes "an ongoing series of social engagements, usually characterized by the parties' interest, or at least their potential interest, in pursuing a romantic relationship."[32] We applied a similar durational requirement to the term "sexual relationship." In *Leu v. State*, for example, we held that the defendant's ongoing friendship with another man that included occasional sexual intimacy qualified as a "sexual relationship" under AS 18.66.990 because "[t]his is not the type of non-consensual or short-lived sexual involvement that falls outside the ordinary person's understanding of a 'sexual

---

[30]  This definition is taken from an out-of-state case with different statutory definitions. *See Scott v. Shay*, 928 A.2d 312, 314-16 (Penn. Super. Ct. 2007).

[31]  *Bates v. State*, 258 P.3d 851, 862 (Alaska App. 2011) (citations omitted).

[32]  *Id.* at 861; *see also* Cal. Fam. Code § 6210 and Cal. Penal Code § 243(f)(10) (defining "dating relationships" broadly as "frequent, intimate associations primarily characterized by the expectation of affection or sexual involvement independent of financial considerations").

relationship.'"[33]  Likewise, in *Richart v. State*, we expressed significant doubt that a "single prior act of forced sexual contact" could qualify as a "sexual relationship" for purposes of AS 18.66.990.[34]

Here, we are not dealing with a single prior act of forced sexual contact. Instead, K.H.'s grand jury testimony makes clear that, from K.H.'s perspective at least, she was engaged in a sexual or dating relationship with Anderson — a relationship that spanned many months and involved multiple intimate encounters, not all of which were sexual in nature.

Mrs. Anderson and the dissent both contend that this relationship cannot be acknowledged as a "relationship" for purposes of AS 18.66.990(5)(C)-(D) because K.H. could not lawfully be in a sexual relationship with Anderson given their respective ages.[35]  We agree with Mrs. Anderson and the dissent that K.H.'s purported "consent" to the sexual acts does not alter the criminal nature of Mr. Anderson's conduct.  Sexual activity between an adult and a person under the legal age of consent is a crime, regardless of whether the minor victim subjectively perceives him or herself to be a "consenting" partner to the sexual abuse.[36]  As we previously explained in *State v. Jackson*, "[i]t is precisely because the law deems children to be incapable of rendering

---

[33]  *Leu v. State*, 251 P.3d 363, 369 (Alaska App. 2011).

[34]  *Richart v. State*, 2001 WL 1299120, at *3 (Alaska App. Oct. 24, 2001) (unpublished); *see also Miller v. State*, 312 P.3d 1112, 1116 (Alaska App. 2013) (noting that a single consensual sexual encounter does not amount to a "sexual relationship" under AS 18.66.-990(5)).

[35]  *See* AS 11.41.434(a)(3)(B); AS 11.41.436(a)(5)(B).  As a general matter, the age of consent in Alaska is 16 years old.

[36]  *State v. Jackson*, 776 P.2d 320, 328 (Alaska App. 1989).

meaningful consent in such situations that [statutory rape] has been defined to make consent irrelevant."[37]

We disagree, however, with Mrs. Anderson and the dissent that this means K.H. should be denied the legal protections that would otherwise be granted to her in these circumstances.[38] The underlying legislative intent of the 1996 legislation was to broaden the definition of domestic violence so as to ensure legal protections to all persons who were rendered particularly vulnerable by virtue of their intimate relationship with their abuser. In keeping with this intent, the legislature defined "household member" to include adults and minors "who are engaged in or who have engaged in a sexual relationship" — thereby recognizing that such a relationship between an adult and a minor can exist for purposes of extending legal protections to those minors.[39]

In the dissent, Chief Judge Mannheimer criticizes the Court for extending legal protections to K.H. under reasoning that would not apply to all minors who have

---

[37] *Id.*

[38] We note that those protections would include being able to apply for a domestic violence protective order should the relationship turn violent. *See* AS 18.66.100(a) ("A person who is or has been a victim of a crime involving domestic violence may file a petition in the district or superior court for a protective order against a household member.").

[39] AS 18.66.990(5)(D). We note that Mrs. Anderson argues that the "or" in this statutory subsection should be interpreted to mean that only adults in sexual relationships with other adults qualify as household members and only minors in sexual relationships with other minors qualify as household members. But such a reading would be contrary to the meaning of the other subsections, which are structured similarly and clearly intend "adults or minors" to also include adults *and* minors. *See, e.g.*, AS 18.66.990(5)(B) ("household member" includes "adults or minors who live together or have lived together"); AS 18.66.990(5)(E) ("household member" includes "adults or minors who are related to each other up to the fourth degree of consanguinity, whether of the whole or half blood or by adoption"); AS 18.66.990(5)(F) ("household member" includes "adults or minors who are related or formerly related by marriage").

suffered sexual abuse. We agree that this case would be much easier to resolve if Alaska law included an "any child" exception to its marital privileges, as many other jurisdictions have done. But we do not have the authority to create such a broad exception where none currently exists.[40] That is for the legislature to decide.[41]

We are guided in our analysis, however, by the larger principles of statutory interpretation, which require us to strictly construe the marital privilege at issue here and to interpret the statutory exception in accordance with the underlying legislative intent.[42]

At its heart, the domestic violence exception represents a clear legislative determination that society's interest in preserving family peace and harmony must give way to the broader societal interest in protecting victims who are made particularly vulnerable by virtue of their familial, domestic, or intimate relationships with their offenders. Because K.H.'s grand jury testimony provides a factual basis for finding such an intimate relationship here, and because society's interest in preserving the peace and harmony of a marriage in which an adulterous affair with an underage student has occurred is commensurately that much weaker, we conclude that the superior court did not err when it rejected Mrs. Anderson's spousal immunity claim in this case.

---

[40] *Griswold v. City of Homer*, 925 P.2d 1015, 1019 (Alaska 1996); *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974).

[41] *Cf.* Goodno, *supra* note 16, at 22-23 (discussing the public policy reasons for adopting an "any child" exception to marital privileges and noting the particular need for such an exception in sexual abuse cases involving young children where the victims will often be developmentally unable to act as witnesses in court and the need for relevant testimony from a reluctant spouse may be that much greater).

[42] *See Y.J. v. State*, 130 P.3d 954, 959 (Alaska App. 2006); *Daniels v. State*, 681 P.2d 341, 344, 345 (Alaska App. 1984); *see also Osborne v. State*, 623 P.2d 784, 787 (Alaska 1981); *Loesche v. State*, 620 P.2d 646, 649 (Alaska 1980).

*Conclusion*

The ruling of the superior court is AFFIRMED.

Judge MANNHEIMER, dissenting.

The petitioner in this case, Jennifer Anderson, is the wife of Jeremy Anderson. Mr. Anderson is a former high school teacher who stands indicted on multiple counts of sexual abuse of a minor. These charges are based on allegations that, over the span of several months, Mr. Anderson repeatedly had sexual intercourse and sexual contact with one of his students, fifteen-year-old K.H.

Under Alaska Evidence Rule 505(a)(1), a married person has a privilege not to be called as a witness when their spouse is charged with a crime. But there are several exceptions to this "spousal immunity" privilege. One of the exceptions is for cases where the spouse is charged with a "crime of domestic violence".[1]

The main question in this appeal is whether the charges against Jeremy Anderson — charges of sexual abuse of a minor — constitute "crimes of domestic violence". For if these charges are "crimes of domestic violence", then Jennifer Anderson cannot validly claim the spousal immunity privilege, and the State can compel her to testify against her husband.

Anderson and K.H. are not related, nor are they members of the same domestic household. Rather, K.H. was Anderson's student.

Under these circumstances, and under the pertinent definitions contained in AS 18.66.990, the question of whether the charges against Jeremy Anderson constitute "crimes of domestic violence" ultimately turns on the answer to yet another question: Were Jeremy Anderson and his teenage student K.H. "engaged in a sexual relationship"?

If Anderson and K.H. were "engaged in a sexual relationship", then (by statute) they are deemed to be "household members", and Anderson's sexual abuse

---

[1] *See* Alaska Evidence Rules 505(a)(2)(D)(v) and 505(b)(2)(A).

of K.H. would constitute a crime of domestic violence — meaning that Anderson's wife can be compelled to testify against him. [2]

Normally, when an adult sexually abuses a child, it would seem strange (if not somewhat repugnant) to say that the child and their abuser were "engaged in a sexual relationship". Indeed, if K.H. were a significantly younger child, I trust that my colleagues would never uphold a finding that K.H. had a "sexual relationship" with an adult, no matter what K.H. said about her willingness to engage in the sexual activity.

But my colleagues conclude that, as a matter of law, there *was* a "sexual relationship" between Jeremy Anderson and K.H. in this case. They base their conclusion on K.H.'s grand jury testimony.

At grand jury, K.H. testified that, with one exception, she viewed all of her sexual activities with Anderson as "consensual". Based on K.H.'s testimony that she consented to have sex with Anderson, my colleagues conclude that K.H. and Anderson were "engaged in a sexual relationship". Thus, Anderson's alleged sexual abuse of K.H. constitutes "domestic violence" — and Jennifer Anderson can therefore be forced to testify against her husband.

But my colleagues also concede that, as a practical matter, their ruling means that sexual abuse cases will henceforth be divided into two categories.

The first category will be the typical cases where the child victim does *not* view the sexual abuse as "consensual". In those cases, the sexual abuse *will not* be a "crime of domestic violence". This means that the defendant's spouse can validly invoke their spousal immunity privilege, and the spouse cannot be compelled to testify.

The second category will be the cases where the child victim declares that they consented to the acts of sexual abuse. In those cases, the sexual abuse *will* be a

---

[2] *See* AS 18.66.990(3) and AS 18.66.990(5)(D).

"crime of domestic violence".  Because of this, the spousal immunity privilege will not apply, and the defendant's spouse can be compelled to testify.

In other words, under the rule adopted by my colleagues, when a defendant is charged with sexually abusing a child who is unrelated to the defendant or their spouse, and who is not otherwise a member of the defendant's domestic unit, the question of whether the defendant's spouse can be compelled to testify hinges on the *victim's attitude* toward the sexual abuse.

If the victim says that they wanted to participate in the acts of sexual abuse, then the defendant's spouse can be compelled to testify.  But if the victim says that they did not want to participate in the acts of sexual abuse, then the defendant's spouse cannot be compelled to testify.

My colleagues justify this strange rule by asserting that they are simply interpreting AS 18.66.990 and Evidence Rule 505 to advance the legislative purpose of making it easier to prosecute cases of sexual abuse.  They acknowledge that, under their rule, spouses cannot be compelled to testify in cases where an adult is accused of sexually abusing an unwilling child, or where an adult is accused of abusing a child so young that the child cannot articulate willingness or unwillingness to engage in sexual activity.  Nevertheless, my colleagues conclude that it is better to achieve at least a portion of the legislature's goal.

Thus, in the interest of partially achieving this goal, my colleagues are willing to declare that when a child says that they wanted to have sex with an adult (and to have sex with this adult on more than one occasion), the child and the adult have formed a "sexual relationship".

This reasoning is inconsistent with the doctrine that minors cannot meaningfully consent to engage in sexual conduct with adults.  It implicitly rests on the

notion that some children have the intellectual and emotional maturity to make a meaningful decision about such matters.

Even conceding this notion (which I do not), my colleagues do not remand this case to the superior court so that the trial judge can evaluate K.H.'s intellectual and emotional capacity to meaningfully consent to have sex with her teacher, or so that the judge can investigate whether there might have been coercive aspects to the situation that would raise questions as to whether the child was truly "consenting" to the sexual activity with her teacher. Instead, my colleagues base their decision in this case on an uncritical acceptance of the child's grand jury testimony.

Moreover, the distinction that my colleagues have drawn bears no rational relation to the policies behind the marital privileges, nor to the policies underlying the exceptions to the marital privileges.

I therefore dissent.

What follows is a more detailed examination of the law pertaining to this case, and a fuller explanation of why I believe that my colleagues have reached the wrong decision.

*The pertinent statutes and rules*

Alaska Evidence Rule 505(a)(1) gives married people the right to refuse to testify against their spouse (or to testify in favor of their spouse, for that matter). And Alaska Evidence Rule 505(b)(1) gives spouses and former spouses the right to block testimony about confidential communications that occurred between the spouses during their marriage. But these evidentiary privileges have many exceptions. One of the

exceptions is for cases where a spouse is charged with a "crime involving domestic violence" as defined in AS 18.66.990. [3]

Sexual relations between a teacher and a minor student might not constitute "domestic violence" within the everyday meaning of this phrase. But AS 18.66.990 contains a special, expansive definition of "domestic violence".

Under AS 18.66.990(3), any "crime against the person" — *i.e.*, any crime defined in Title 11, chapter 41 of the Alaska Statutes — qualifies as a crime of "domestic violence" if the crime was committed by one "household member" against another "household member".

Sexual abuse of a minor is one of the "crimes against the person" codified in AS 11.41. [4] And AS 18.66.990(5) defines "household member" in a special, expansive way. Under subsection (D) of this statute, the term "household member" not only includes people who share the same household, but also "adults or minors who ... have engaged in a sexual relationship".

Putting all of these statutory provisions together: Alaska law declares that if two people have "engaged in a sexual relationship", then they are "household members" even if they don't live in the same household. And because they are "household members", if one of them commits a crime against the other, and if this crime is one of the "crimes against the person" defined in AS 11.41, then the crime is a "crime involving domestic violence".

As I have already explained, when a person is charged with a "crime involving domestic violence", the spousal immunity privilege and the marital communications privilege do not apply. Thus, in cases of "domestic violence" — as that

---

[3] *See* Evidence Rule 505(a)(2)(D)(v) and Evidence Rule 505(b)(2)(A).

[4] *See* AS 11.41.434 through AS 11.41.440.

term is broadly defined in AS 18.66.990 — the defendant's spouse can be compelled to testify against the defendant.

*Why I conclude that Jeremy Anderson and K.H. did not share a "sexual relationship"*

Jennifer Anderson has asserted her spousal privilege not to testify against her husband, and the State is relying on the "domestic violence" exception to defeat this claim of privilege. But the State's invocation of the "domestic violence" exception is problematic for two reasons.

The first difficulty is that, of the several definitions of "household member" contained in AS 18.66.990(5), none of them seem to apply to Jeremy Anderson's case. Anderson is charged with sexually abusing a child who is not a member of the Anderson household, and who has no familial relationship with either Anderson or his wife. Rather, Anderson and K.H. had the relationship of teacher and student.

To resolve this difficulty, my colleagues rely on the definition of "household member" contained in subsection (D) of the statute. This provision declares that a defendant and a victim are "household members" if have "engaged in a sexual relationship". Based on K.H.'s grand jury testimony that she viewed her sexual activities with Anderson as "consensual", my colleagues conclude that Anderson and K.H. were engaged in a sexual relationship.

But the fact that two people have repeatedly engaged in sexual activity does not necessarily mean that they have shared a "sexual relationship".

Alaska has seen unfortunate instances where a man has held a woman captive and raped her repeatedly over a number of days. See, for instance, *Morrell v. State*, 575 P.2d 1200 (Alaska 1978). I am confident that, in such cases, my two

colleagues would disavow any notion that the defendant and his victim were "engaged in a sexual relationship".

The principle is the same when an adult sexually abuses a child. Alaska's sexual abuse of a minor statutes are premised on the idea that children below a certain age cannot make meaningful decisions about engaging in sexual activity with an adult.

I doubt that my colleagues would be willing to say that, when an adult repeatedly engages in sex with a pre-pubescent child, the adult and the child are sharing a "sexual relationship" — even in cases where the child says that they were willing to engage in the sexual activity to please the adult.

But my two colleagues have embraced the notion that when an adult sexually abuses an *older* child (a child who is below the age of consent, but who is physically mature), and if this older child asserts that they *wanted* to engage in this sexual activity, then the adult and the abused child have shared a "sexual relationship".

I disagree. K.H. was fifteen years old — below the age of consent — when she allegedly engaged in sex with Anderson. The reason for having an age of consent is that, even though children may be physically mature, and even though they *think* that they want to have sexual relations with an adult, the legislature has determined that children of that age do not have sufficient intellectual and emotional maturity to meaningfully consent to such sexual activity.

Thus, even though K.H. testified that she willingly engaged in sex with Anderson, they did not share a "sexual relationship" in the eyes of the law. As a legal matter, their sexual activities were no more "consensual" than if K.H. had been a pre-pubescent child.

There is yet another problem with my colleagues' analysis of this issue. Even if we assume that some children have the intellectual and emotional maturity to

make a meaningful decision about engaging in sexual activity with adults, my colleagues make no effort to discover if K.H. is one of those children.

My colleagues do not remand this case to the superior court so that the trial judge can evaluate whether K.H. possesses the intellectual and emotional capacity to meaningfully consent to have sex with her teacher. Nor do my colleagues ask the trial judge to investigate whether there might have been coercive aspects to the situation that would cause someone to question whether K.H. was truly "consenting" to the sexual activity, despite what she told the grand jury. Instead, like the trial judge in this case, my colleagues simply accept the child's grand jury testimony uncritically.

I do not.

*Why I conclude that Jeremy Anderson's alleged sexual abuse of K.H. does not constitute a "crime of domestic violence"*

There is a separate legal difficulty with my colleagues' conclusion that the "domestic violence" exception applies to Anderson's case: that conclusion is inconsistent with the legislature's reasons for punishing a crime more severely when it is committed in the context of a domestic relationship.

The phrase "crime involving domestic violence" must be interpreted within the context of the social harm that the legislature was trying to address. Crimes of "domestic violence" share a common characteristic: they are offenses committed by one person against another *within the context of a pre-existing relationship.* [5]

A crime is deemed a "crime involving domestic violence" when it is committed in the context of a pre-existing romantic or familial relationship between the defendant and the victim — a pre-existing relationship that provided the motivation for

---

[5] *See* AS 18.66.990(5).

the crime, or that made the victim more vulnerable (either physically or emotionally), or that otherwise significantly contributed to the commission of the crime.[6] As this Court noted in *Bates v. State*, the "hallmark" of domestic violence is criminal conduct whose purpose is to "coerce, control, punish, intimidate, or exact vengeance within the context of an intimate relationship."[7]

The charges against Anderson do not fit this mold. The State does not allege that Anderson became sexually involved with K.H. and *then* committed a crime against her. Instead, the State alleges that Anderson's sexual activity with K.H. was simultaneously the conduct that formed the "relationship" *and* the conduct that constituted the crime itself.

As the parties to this case acknowledge, there is little legislative history explaining the purpose of the "domestic violence" exception to the marital privileges. But there is *no* indication that the legislature intended the "domestic violence" exception to be interpreted in this circular manner.

*Conclusion*

Although Jeremy Anderson is charged with a serious felony against a minor, his offense does not constitute a "crime involving domestic violence" for purposes of Evidence Rule 505. I therefore conclude that the superior court should have honored Jennifer Anderson's assertion of the spousal immunity privilege. Under Alaska law, Jennifer Anderson has a right to refuse to testify against her husband.

---

[6]   *Tofelogo v. State*, 408 P.3d 1215, 1219-1220 (Alaska App. 2017).

[7]   *Bates v. State*, 258 P.3d 851, 862 (Alaska App. 2011).