NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal* *errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

TEILA V. TOFELOGO,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12542
Trial Court No. 3KO-14-688 CR

O P I N I O N

No. 2575 — December 1, 2017

Appeal from the Superior Court, Third Judicial District, Kodiak, Steve W. Cole, Judge.

Appearances: Amanda Harber, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Stephen B. Wallace, District Attorney, Kodiak, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Teila V. Tofelogo appeals the sentence he received for criminally negligent homicide. This homicide stemmed from an incident at a treatment group home where Tofelogo and the victim, Dennis Fathke, were roommates.

On the day in question, Tofelogo and Fathke were in their room, and Tofelogo was pretending to be a ninja. He was holding a long-bladed knife, and he was making martial arts moves. Fathke was lying on a bed behind Tofelogo, but Fathke got up from the bed just as Tofelogo executed a sudden pivot. The knife blade penetrated Fathke's side, inflicting a fatal wound.

Tofelogo initially tried to staunch the flow of blood, but when Fathke moaned and fell to the floor, Tofelogo left the room to call 911. By the time police officers arrived, Fathke had no pulse; he was pronounced dead at the hospital about a half-hour later.

Tofelogo was indicted for criminally negligent homicide, AS 11.41.130(a), and he ultimately pleaded guilty to this charge.

As part of Tofelogo's plea agreement, he stipulated that aggravator AS 12.55.155(c)(18)(A) applied to his case. That is, Tofelogo conceded that, because Fathke was his roommate, the homicide was committed against "a member of the same social unit made up of those living together in the same dwelling as the defendant". Because Tofelogo conceded this aggravating factor, he faced a sentencing range of 1 to 10 years' imprisonment. [1]

The superior court sentenced Tofelogo to 6 years with 4 years suspended (*i.e.*, 2 years to serve). In imposing this sentence, the judge declared that he was giving "some weight" to aggravator (c)(18)(A) — *i.e.*, to the fact that Tofelogo and Fathke were roommates.

---

[1]    Former AS 12.55.125(d)(1) (2014 version) and AS 12.55.155(a)(1).

In his sentencing remarks, the judge acknowledged that Tofelogo and Fathke did not have any family connection or emotional relationship — no inter-personal connection of the sort that typifies crimes of domestic violence. But the judge noted that aggravator (c)(18)(A) is worded quite broadly — that the aggravator does not require proof of a familial or emotional relationship between the defendant and the victim, but rather extends to all cases where the defendant and the victim share the same dwelling. The judge therefore concluded that it was proper for him to rely on aggravator (c)(18)(A) when formulating the sentence in Tofelogo's case:

> *The Court*: We all have a ... right to feel safe and secure in our own homes without someone who is living amongst us hurting us or killing us. And it doesn't have to necessarily be someone that we're related to, [even though] it appears that the focus [of] that aggravator ... really was on acts of people [who are] family members or ... people who are ... in a boyfriend-girlfriend relationship.

On appeal, Tofelogo argues that the facts of his case do not fit within the legislature's rationale for enacting aggravator (c)(18)(A) — and that, for this reason, the sentencing judge should not have given this aggravator any weight.

For the reasons explained in this opinion, we agree that the sentencing judge should have given no weight to aggravator (c)(18)(A) in Tofelogo's case. We therefore direct the superior court to re-sentence Tofelogo.

*The superior court's rejection of Tofelogo's proposed mitigator*

Before we reach the question of aggravator (c)(18)(A), we turn briefly to Tofelogo's other claim in this appeal — his contention that the superior court erred by rejecting a proposed mitigating factor.

In advance of sentencing, Tofelogo's attorney proposed mitigator AS 12.55.155(d)(9) — that Tofelogo's conduct was "among the least serious" within the definition of criminally negligent homicide. The sentencing judge found that Tofelogo had failed to prove this mitigator by clear and convincing evidence.

Although the judge commended Tofelogo for trying to save Fathke, and for honestly disclosing what had happened when he was interviewed by the police, the judge concluded (from the circumstances of the occurrence) that Tofelogo's actions were "close to really being reckless conduct" — in other words, close to constituting the more serious offense of manslaughter. [2]

We agree with the sentencing judge that the record fails to clearly establish that Tofelogo's conduct was among the least serious within the definition of criminally negligent homicide. We therefore uphold the sentencing judge's ruling on this issue.

We now turn to the question of aggravator (c)(18)(A).

*An examination of aggravator (c)(18)(A) and the broader statutory category of "crimes involving domestic violence"*

AS 12.55.155(c) contains the statutory aggravating factors that apply to presumptive sentencing. Under subsection (c)(18)(A) of this statute, a felony offense is aggravated for sentencing purposes if the offense is one of the "offenses against the person" defined in AS 11.41, and if the offense was "committed against a spouse, a former spouse, or a member of the social unit made up of those living together in the same dwelling as the defendant".

---

[2]    AS 11.41.120(a).

The crimes covered by aggravator (c)(18)(A) are a subset of the larger category of "crimes involving domestic violence" — the category of offenses defined by AS 18.66.990(3) and (5).

The category of "crimes involving domestic violence" overlaps completely with the crimes covered by aggravator (c)(18)(A) — because, under AS 18.66.990(3), the definition of "crime involving domestic violence" includes any offense defined in AS 11.41 if the crime is committed against a "household member", and because the term "household member" includes "current or former spouses" as well as "adults or minors who live together or who have lived together". *See* AS 18.66.990(5)(A) and (B).

(The statutory category of "crimes involving domestic violence" actually encompasses a broader range of inter-personal relationships than aggravator (c)(18)(A), because the definition of "household member" includes not only "current or former spouses" and "adults or minors who live together or who have lived together", but also six other types of inter-personal relationships. [3])

---

[3] The other six types of inter-personal relationships included in AS 18.66.990(5)'s definition of "household member" are:

(C) adults or minors who are dating or who have dated;

(D) adults or minors who are engaged in or who have engaged in a sexual relationship;

(E) adults or minors who are related to each other up to the fourth degree of consanguinity, whether of the whole or half blood or by adoption, computed under the rules of civil law;

(F) adults or minors who are related or formerly related by marriage;

(G) persons who have a child of the relationship; and

(continued...)

Because the kinds of cases covered by aggravator (c)(18)(A) are a subset of the larger category of "crimes involving domestic violence" defined by AS 18.66.-990(3) and (5), we conclude that aggravator (c)(18)(A) is based on the same rationale that prompted the legislature to enact the definition of "crime involving domestic violence": the policy of altering various provisions of law to facilitate the prosecution and punishment of crimes that occur between people who are involved with or related to each other in specified ways.

*The ways in which the statutory definition of "crimes involving domestic violence" exceeds the scope of its underlying rationale*

In a number of prior decisions, this Court has analyzed the definition of "crime involving domestic violence" codified in AS 18.66.990(3) and (5). We have repeatedly pointed out that the literal wording of this definition encompasses more situations than the legislature intended — situations where it does not make any sense to treat a crime differently based on the relationship between the defendant and the victim.

We initially addressed this problem in *Carpentino v. State*[4] and *Bingaman v. State*.[5] As both *Carpentino* and *Bingaman* explain, the legislature's definition of "domestic violence" is worded so broadly that, if one were to read this definition literally, it would cover many instances where the specified relationship between the

---

[3]  (...continued)
(H) minor children of a person in a relationship that is described in (A) - (G)[.]

[4]  42 P.3d 1137 (Alaska App. 2002) (opinion on rehearing).

[5]  76 P.3d 398 (Alaska App. 2003).

defendant and the victim is irrelevant to assessing whether the defendant is atypically dangerous or whether the defendant's conduct is atypically blameworthy.

*Carpentino* was the first occasion where we pointed out that AS 18.66.990 defines the phrase "domestic violence" in such a sweeping way that it covers situations wholly distinct from the commonly accepted meaning of "domestic violence":

> For example, if an elderly uncle comes to visit his favorite nephew and, while lighting his pipe, recklessly scorches a table cloth or a chair, the old man has seemingly just committed an act of "domestic violence" as defined in AS 18.66.990(3). That is, the uncle has committed the listed offense of criminally negligent burning under AS 11.46.430 (negligently damaging the property of another by fire), and the victim is related to the perpetrator within the fourth degree of consanguinity — thus qualifying them as "household members" under AS 18.66.990(5)(E).

> Similarly, if a group of former college roommates decide to hold a twenty-year reunion at one of their homes, and if one of the visiting former roommates gets drunk and recklessly jams his friend's CD player while trying to insert a CD into it, this roommate has seemingly just committed an act of "domestic violence". The intoxicated roommate has committed the listed offense of fourth-degree criminal mischief under AS 11.46.486(a)(1) (tampering with the property of another with reckless disregard for the risk of harm or loss), and all of the former college roommates are "household members" under AS 18.66.990(5)(B).

*Carpentino*, 42 P.3d at 1141.

The following year, in *Bingaman*, this Court addressed the definition of "domestic violence" in the context of Alaska Evidence Rule 404(b)(4) — the evidence rule that allows the government to introduce evidence of a defendant's prior acts of

domestic violence when the defendant is being prosecuted for a crime of domestic violence.

In *Bingaman*, we limited the scope of Evidence Rule 404(b) because, in light of the expansive definition of "domestic violence", Rule 404(b)(4) purported to authorize the government to introduce a substantial amount of irrelevant evidence — "evidence of acts that have little or no relevance to establishing a pattern of physical abuse."[6] As we explained:

> [A] person who causes a traffic accident through criminal negligence and, by chance, happens to injure the child of a former high school sweetheart has committed a "crime involving domestic violence" as defined in AS 18.66.-990. ... Evidence Rule 404(b)(4) states that evidence of the traffic accident (*i.e.*, evidence of the defendant's negligent driving) ... [is] admissible if the defendant is prosecuted for beating their spouse. Yet the defendant's negligent driving ... [has] no discernible relevance to the assault charge.

*Bingaman*, 76 P.3d at 412.

In the years since *Carpentino* and *Bingaman*, this Court has encountered the legislature's over-inclusive definition of "domestic violence" in other contexts.

In *Williams v. State*, 151 P.3d 460 (Alaska App. 2006), this Court addressed a constitutional challenge to a bail statute, AS 12.30.027(b), that prohibited all persons charged with a crime of domestic violence from returning to the residence of the alleged victim before trial — regardless of the circumstances of the offense, and with no opportunity for judicial modification of this restriction. We concluded that this bail statute was unconstitutional because, "[given] the broad definition of 'a crime involving

---

[6]   *Bingaman*, 76 P.3d at 406.

domestic violence,' there [was] a substantial risk that the statute [would] burden the liberty interests of persons who pose no appreciable risk of future violence."[7]

As we explained in *Williams*,

> [It] is easy to imagine situations in which the [bail] condition would serve no legitimate governmental purpose. For instance, if a mother had an accident while driving with her infant daughter and was charged with reckless endangerment or assault for that offense, the court would be obliged to prohibit the mother from returning to the residence she had shared with her daughter. Or, if Williams's nineteen-year-old daughter, who was living at home and attending college during this time, had recklessly burned her parents' front porch and been charged with criminally negligent burning for that offense, the court would be obliged to bar her from returning home for the duration of her pre-trial release.
>
> .  .  .
>
> As the above examples illustrate, under Alaska's far-reaching definition of domestic violence, probable cause to believe a person has committed a domestic violence offense cannot ... be equated with probable cause to believe that the person poses an ongoing risk to the alleged victim's safety.

*Williams*, 151 P.3d at 467-68.

Similarly, in *Cooper v. District Court*, 133 P.3d 692 (Alaska App. 2006), we rejected the argument that whenever a defendant is convicted of a "crime involving domestic violence", the sentencing judge should order the defendant to attend "batterer's intervention treatment". We noted that even though the phrase "domestic violence" is normally understood to mean an assault committed by one domestic partner against

---

[7]    *Williams*, 151 P.3d at 467.

another, this phrase is defined in AS 18.66.990 "in a wide-ranging way, quite divorced from its everyday meaning". [8] We then concluded:

> Because the definition of "crime involving domestic violence" is so expansive — because it encompasses many situations that have nothing to do with an assault by one domestic partner against another — there will be many cases in which, even though the defendant's crime may qualify as a "crime involving domestic violence", it makes no sense to require the defendant to undergo batterer's intervention treatment.

*Cooper*, 133 P.3d at 707.

*Application of these principles to aggravator (c)(18)(A)*

With these prior decisions in mind, we return to Tofelogo's case.

As we explained toward the beginning of this opinion, Tofelogo stipulated that the facts of his case fell within the literal wording of aggravator (c)(18)(A). His crime (criminally negligent homicide) is one of the "offenses against the person" defined in AS 11.41, and the victim of his offense was "a member of the same social unit made up of those living together in the same dwelling as [Tofelogo]".

In *Pickard v. State*, 965 P.2d 755, 761 (Alaska App. 1998), this Court described the social policy underlying this aggravator:

> Both the Alaska Legislature and this court have recognized that domestic violence ... represents a serious danger to its victims and a significant harm to society at large.

---

8    *Cooper*, 133 P.3d at 707.

Under AS 12.55.155(c)(18)(A), a felony assault is aggravated if it was committed against the defendant's spouse, the defendant's former spouse, or any other member of the defendant's household. By enacting this aggravating factor, the legislature has declared that felony assaults against spouses and former spouses are to be considered atypically serious (all else being equal).

Thus, the underlying rationale of aggravator (c)(18)(A) is to authorize courts to impose more severe sentences on defendants whose relationship to their victim makes the crime more blameworthy. But as was true of the statutes and court rules in *Carpentino*, *Bingaman*, *Williams*, and *Cooper*, the wording of aggravator (c)(18)(A) exceeds this underlying rationale.

By its terms, aggravator (c)(18)(A) applies whenever a defendant commits one of the crimes defined in AS 11.41 and the victim of the crime is "a spouse" or "a former spouse" of the defendant, or the victim is "a member of the social unit made up of those living together in the same dwelling as the defendant". Interpreted literally, this aggravator would apply to a defendant who was convicted of felony assault for causing a traffic accident that resulted in injuries to other people and, by chance, one of the people injured in this accident was the defendant's former spouse, or was another resident of the defendant's dormitory or barracks. [9]

In such cases, the rationale behind aggravator (c)(18)(A) does not apply — because the identity of the victim and the victim's relationship to the defendant have essentially no bearing on the blameworthiness of the defendant's conduct or the defendant's degree of dangerousness.

---

[9] *See* AS 11.41.220(a)(1)(B).

As this Court noted in *Bates v. State*, 258 P.3d 851, 862 (Alaska App. 2011), the "hallmark" of domestic violence is conduct whose purpose is "to coerce, control, punish, intimidate, or exact revenge within the context of an intimate relationship." [10] Thus, the category of crimes "involving domestic violence" defined in AS 18.66.990(3) and (5), as well as the category of crimes covered by aggravator (c)(18)(A), are all implicitly premised on the assumptions that the defendant's conduct was directed at the victim, and that the specified relationship between the defendant and the victim provided a motivation for the crime, or that this relationship made the victim more vulnerable, or that this relationship was otherwise a significant contributing factor in the crime.

Those assumptions do not apply to Tofelogo's case. Accordingly, even though Tofelogo's case falls within the literal wording of aggravator (c)(18)(A), the rationale of this aggravator does not apply to the facts of Tofelogo's case, and the sentencing judge should not have given the aggravator any weight. Tofelogo must be re-sentenced.

*Conclusion*

We affirm the superior court's rejection of Tofelogo's proposed mitigator, but we hold that the superior court committed error by giving any weight to aggravator (c)(18)(A). We therefore direct the superior court to re-sentence Tofelogo.

Given the fact that Tofelogo must be re-sentenced, we need not reach his argument that the sentencing judge gave unjustified weight to Tofelogo's prior criminal history. Tofelogo's attorney can address this matter at the re-sentencing.

---

[10] Quoting *People v. Disher*, 224 P.3d 254, 258 (Colo. 2010).

– 12 –

2575