Judge MANNHEIMER, dissenting.
The petitioner in this case, Jennifer Anderson, is the wife of Jeremy Anderson. Mr. Anderson is a former high school teacher who stands indicted on multiple counts of sexual abuse of a minor. These charges are based on allegations that, over the span of several months, Mr. Anderson repeatedly had sexual intercourse and sexual contact with one of his students, fifteen-year-old K.H.
Under Alaska Evidence Rule 505(a)(1), a married person has a privilege not to be called as a witness when their spouse is charged with a crime. But there are several exceptions to this "spousal immunity" privilege. One of the exceptions is for cases where the spouse is charged with a "crime of domestic violence".[1]
The main question in this appeal is whether the charges against Jeremy Anderson - charges of sexual abuse of a minor - constitute "crimes of domestic violence". For if these charges are "crimes of domestic violence", then Jennifer Anderson cannot validly claim the spousal immunity privilege, and the State can compel her to testify against her husband.
Anderson and K.H. are not related, nor are they members of the same domestic household. Rather, K.H. was Anderson's student.
Under these circumstances, and under the pertinent definitions contained in AS 18.66.990, the question of whether the charges against Jeremy Anderson constitute "crimes of domestic violence" ultimately turns on the answer to yet another question: Were Jeremy Anderson and his teenage student K.H. "engaged in a sexual relationship"?
If Anderson and K.H. were "engaged in a sexual relationship", then (by statute) they are deemed to be "household members", and Anderson's sexual abuse of K.H. would constitute a crime of domestic violence - meaning that Anderson's wife can be compelled to testify against him.[2]
Normally, when an adult sexually abuses a child, it would seem strange (if not somewhat repugnant) to say that the child and their abuser were "engaged in a sexual relationship". Indeed, if K.H. were a significantly younger child, I trust that my colleagues would never uphold a finding that K.H. had a "sexual relationship" with an adult, no matter what K.H. said about her willingness to engage in the sexual activity.
But my colleagues conclude that, as a matter of law, there was a "sexual relationship" between Jeremy Anderson and K.H. in this case. They base their conclusion on K.H.'s grand jury testimony.
At grand jury, K.H. testified that, with one exception, she viewed all of her sexual activities with Anderson as "consensual". Based on K.H.'s testimony that she consented to have sex with Anderson, my colleagues conclude that K.H. and Anderson were "engaged in a sexual relationship". Thus, Anderson's alleged sexual abuse of K.H. constitutes "domestic violence" - and Jennifer Anderson can therefore be forced to testify against her husband.
*1081 But my colleagues also concede that, as a practical matter, their ruling means that sexual abuse cases will henceforth be divided into two categories.
The first category will be the typical cases where the child victim does not view the sexual abuse as "consensual". In those cases, the sexual abuse will not be a "crime of domestic violence". This means that the defendant's spouse can validly invoke their spousal immunity privilege, and the spouse cannot be compelled to testify.
The second category will be the cases where the child victim declares that they consented to the acts of sexual abuse. In those cases, the sexual abuse will be a "crime of domestic violence". Because of this, the spousal immunity privilege will not apply, and the defendant's spouse can be compelled to testify.
In other words, under the rule adopted by my colleagues, when a defendant is charged with sexually abusing a child who is unrelated to the defendant or their spouse, and who is not otherwise a member of the defendant's domestic unit, the question of whether the defendant's spouse can be compelled to testify hinges on the victim's attitude toward the sexual abuse.
If the victim says that they wanted to participate in the acts of sexual abuse, then the defendant's spouse can be compelled to testify. But if the victim says that they did not want to participate in the acts of sexual abuse, then the defendant's spouse cannot be compelled to testify.
My colleagues justify this strange rule by asserting that they are simply interpreting AS 18.66.990 and Evidence Rule 505 to advance the legislative purpose of making it easier to prosecute cases of sexual abuse. They acknowledge that, under their rule, spouses cannot be compelled to testify in cases where an adult is accused of sexually abusing an unwilling child, or where an adult is accused of abusing a child so young that the child cannot articulate willingness or unwillingness to engage in sexual activity. Nevertheless, my colleagues conclude that it is better to achieve at least a portion of the legislature's goal.
Thus, in the interest of partially achieving this goal, my colleagues are willing to declare that when a child says that they wanted to have sex with an adult (and to have sex with this adult on more than one occasion), the child and the adult have formed a "sexual relationship".
This reasoning is inconsistent with the doctrine that minors cannot meaningfully consent to engage in sexual conduct with adults. It implicitly rests on the notion that some children have the intellectual and emotional maturity to make a meaningful decision about such matters.
Even conceding this notion (which I do not), my colleagues do not remand this case to the superior court so that the trial judge can evaluate K.H.'s intellectual and emotional capacity to meaningfully consent to have sex with her teacher, or so that the judge can investigate whether there might have been coercive aspects to the situation that would raise questions as to whether the child was truly "consenting" to the sexual activity with her teacher. Instead, my colleagues base their decision in this case on an uncritical acceptance of the child's grand jury testimony.
Moreover, the distinction that my colleagues have drawn bears no rational relation to the policies behind the marital privileges, nor to the policies underlying the exceptions to the marital privileges.
I therefore dissent.
What follows is a more detailed examination of the law pertaining to this case, and a fuller explanation of why I believe that my colleagues have reached the wrong decision.
The pertinent statutes and rules
Alaska Evidence Rule 505(a)(1) gives married people the right to refuse to testify against their spouse (or to testify in favor of their spouse, for that matter). And Alaska Evidence Rule 505(b)(1) gives spouses and former spouses the right to block testimony about confidential communications that occurred between the spouses during their marriage. But these evidentiary privileges have many exceptions. One of the exceptions is for cases where a spouse is charged with a *1082 "crime involving domestic violence" as defined in AS 18.66.990.[3]
Sexual relations between a teacher and a minor student might not constitute "domestic violence" within the everyday meaning of this phrase. But AS 18.66.990 contains a special, expansive definition of "domestic violence".
Under AS 18.66.990(3), any "crime against the person" - i.e ., any crime defined in Title 11, chapter 41 of the Alaska Statutes - qualifies as a crime of "domestic violence" if the crime was committed by one "household member" against another "household member".
Sexual abuse of a minor is one of the "crimes against the person" codified in AS 11.41.[4] And AS 18.66.990(5) defines "household member" in a special, expansive way. Under subsection (D) of this statute, the term "household member" not only includes people who share the same household, but also "adults or minors who ... have engaged in a sexual relationship".
Putting all of these statutory provisions together: Alaska law declares that if two people have "engaged in a sexual relationship", then they are "household members" even if they don't live in the same household. And because they are "household members", if one of them commits a crime against the other, and if this crime is one of the "crimes against the person" defined in AS 11.41, then the crime is a "crime involving domestic violence".
As I have already explained, when a person is charged with a "crime involving domestic violence", the spousal immunity privilege and the marital communications privilege do not apply. Thus, in cases of "domestic violence" - as that term is broadly defined in AS 18.66.990 - the defendant's spouse can be compelled to testify against the defendant.
Why I conclude that Jeremy Anderson and K.H. did not share a "sexual relationship"
Jennifer Anderson has asserted her spousal privilege not to testify against her husband, and the State is relying on the "domestic violence" exception to defeat this claim of privilege. But the State's invocation of the "domestic violence" exception is problematic for two reasons.
The first difficulty is that, of the several definitions of "household member" contained in AS 18.66.990(5), none of them seem to apply to Jeremy Anderson's case. Anderson is charged with sexually abusing a child who is not a member of the Anderson household, and who has no familial relationship with either Anderson or his wife. Rather, Anderson and K.H. had the relationship of teacher and student.
To resolve this difficulty, my colleagues rely on the definition of "household member" contained in subsection (D) of the statute. This provision declares that a defendant and a victim are "household members" if have "engaged in a sexual relationship". Based on K.H.'s grand jury testimony that she viewed her sexual activities with Anderson as "consensual", my colleagues conclude that Anderson and K.H. were engaged in a sexual relationship.
But the fact that two people have repeatedly engaged in sexual activity does not necessarily mean that they have shared a "sexual relationship".
Alaska has seen unfortunate instances where a man has held a woman captive and raped her repeatedly over a number of days. See, for instance, Morrell v. State , 575 P.2d 1200 (Alaska 1978). I am confident that, in such cases, my two colleagues would disavow any notion that the defendant and his victim were "engaged in a sexual relationship".
The principle is the same when an adult sexually abuses a child. Alaska's sexual abuse of a minor statutes are premised on the idea that children below a certain age cannot make meaningful decisions about engaging in sexual activity with an adult.
I doubt that my colleagues would be willing to say that, when an adult repeatedly engages in sex with a pre-pubescent child, *1083 the adult and the child are sharing a "sexual relationship" - even in cases where the child says that they were willing to engage in the sexual activity to please the adult.
But my two colleagues have embraced the notion that when an adult sexually abuses an older child (a child who is below the age of consent, but who is physically mature), and if this older child asserts that they wanted to engage in this sexual activity, then the adult and the abused child have shared a "sexual relationship".
I disagree. K.H. was fifteen years old - below the age of consent - when she allegedly engaged in sex with Anderson. The reason for having an age of consent is that, even though children may be physically mature, and even though they think that they want to have sexual relations with an adult, the legislature has determined that children of that age do not have sufficient intellectual and emotional maturity to meaningfully consent to such sexual activity.
Thus, even though K.H. testified that she willingly engaged in sex with Anderson, they did not share a "sexual relationship" in the eyes of the law. As a legal matter, their sexual activities were no more "consensual" than if K.H. had been a prepubescent child.
There is yet another problem with my colleagues' analysis of this issue. Even if we assume that some children have the intellectual and emotional maturity to make a meaningful decision about engaging in sexual activity with adults, my colleagues make no effort to discover if K.H. is one of those children.
My colleagues do not remand this case to the superior court so that the trial judge can evaluate whether K.H. possesses the intellectual and emotional capacity to meaningfully consent to have sex with her teacher. Nor do my colleagues ask the trial judge to investigate whether there might have been coercive aspects to the situation that would cause someone to question whether K.H. was truly "consenting" to the sexual activity, despite what she told the grand jury. Instead, like the trial judge in this case, my colleagues simply accept the child's grand jury testimony uncritically.
I do not.
Why I conclude that Jeremy Anderson's alleged sexual abuse of K.H. does not constitute a "crime of domestic violence"
There is a separate legal difficulty with my colleagues' conclusion that the "domestic violence" exception applies to Anderson's case: that conclusion is inconsistent with the legislature's reasons for punishing a crime more severely when it is committed in the context of a domestic relationship.
The phrase "crime involving domestic violence" must be interpreted within the context of the social harm that the legislature was trying to address. Crimes of "domestic violence" share a common characteristic: they are offenses committed by one person against another within the context of a pre-existing relationship .[5]
A crime is deemed a "crime involving domestic violence" when it is committed in the context of a pre-existing romantic or familial relationship between the defendant and the victim - a pre-existing relationship that provided the motivation for the crime, or that made the victim more vulnerable (either physically or emotionally), or that otherwise significantly contributed to the commission of the crime.[6] As this Court noted in Bates v. State , the "hallmark" of domestic violence is criminal conduct whose purpose is to "coerce, control, punish, intimidate, or exact vengeance within the context of an intimate relationship."[7]
The charges against Anderson do not fit this mold. The State does not allege that Anderson became sexually involved with K.H. and then committed a crime against her. Instead, the State alleges that Anderson's sexual activity with K.H. was simultaneously the conduct that formed the "relationship" and the conduct that constituted the crime itself.
*1084 As the parties to this case acknowledge, there is little legislative history explaining the purpose of the "domestic violence" exception to the marital privileges. But there is no indication that the legislature intended the "domestic violence" exception to be interpreted in this circular manner.
Conclusion
Although Jeremy Anderson is charged with a serious felony against a minor, his offense does not constitute a "crime involving domestic violence" for purposes of Evidence Rule 505. I therefore conclude that the superior court should have honored Jennifer Anderson's assertion of the spousal immunity privilege. Under Alaska law, Jennifer Anderson has a right to refuse to testify against her husband.

See Alaska Evidence Rules 505(a)(2)(D)(v) and 505(b)(2)(A).

See AS 18.66.990(3) and AS 18.66.990(5)(D).

See Evidence Rule 505(a)(2)(D)(v) and Evidence Rule 505(b)(2)(A).

See AS 11.41.434 through AS 11.41.440.

See AS 18.66.990(5).

Tofelogo v. State , 408 P.3d 1215, 1219-1220 (Alaska App. 2017).

Bates v. State , 258 P.3d 851, 862 (Alaska App. 2011).