MAASSEN, Justice.
I. INTRODUCTION
A man accidentally killed his roommate with a large knife while demonstrating martial arts moves. He pled guilty to criminally negligent homicide and stipulated to the applicability of a statutory aggravator that allows sentencing above the upper range when a crime is "committed against ... a member of the social unit made up of those living together in the same dwelling as the defendant."[1] On appeal of the sentence, the defendant argued that the aggravator was inappropriate in the context of his case. The court of appeals agreed, concluding that the aggravator is limited to cases in which the defendant's conduct was specifically directed at the victim and had some source in the relationship between the victim and the defendant.[2]
We granted the State of Alaska's petition for hearing. Because we conclude that the aggravator applies to the facts of this case and the sentencing court was not clearly mistaken in giving it some weight, we reverse the decision of the court of appeals.
II. FACTS AND PROCEEDINGS
Teila Tofelogo lived in a group home that provided a sober living environment for men in recovery. According to the later findings by the sentencing court, on an afternoon in November 2016 Tofelogo was "horseplaying" with what he called a "ninja knife," swinging it around while his roommate, Dennis Fathke, sat on a bed behind him. Tofelogo failed to notice when Fathke stood up and came closer, and, while making a turn with the knife, Tofelogo accidentally stabbed Fathke through the bicep and into his chest. Tofelogo summoned help and attempted to administer first aid, but Fathke died soon afterward.
Tofelogo pled guilty to criminally negligent homicide and stipulated to the applicability of AS 12.55.155(c)(18)(A), an aggravating factor that allows sentencing above the presumptive range if "the offense was a felony ... specified in AS 11.41 ['Offenses Against the Person'] and was committed against a spouse, a former spouse, or a member of the social unit made up of those living together in the same dwelling as the defendant." Tofelogo argued, however, that the aggravator should be given "little to no weight" because his conduct did "not fall into the pattern of abusive and threatening conduct typified in a domestic violence case."
The superior court sentenced Tofelogo to six years imprisonment with four suspended; the composite sentence, including the suspended time, was above the presumptive *154 term of one to three years for first-felony negligent homicide.[3] The increased sentence was allowed by the applicability of the aggravator, which raised the upper limit to ten years.[4] The court said it was giving the aggravator "some weight" but "not a tremendous, [not] a lot of weight." The court noted the prevalence of domestic violence in the community, the state, and "the whole world," observing that it involves not just intra-family violence but "also includes people who are living together such as here." The court said that it would have given the factor much more weight if the offense had occurred in a more typical domestic setting - "if this offense had been committed by the defendant against his spouse, his girlfriend, his own parents, [or] his children." But despite the lack of a family relationship, the court declined to give the factor no weight at all; the court cited a "right to feel safe and secure in our own homes without someone who is living amongst us hurting us or killing us, and it doesn't have to necessarily be someone that we're related to."
Tofelogo appealed his sentence to the court of appeals, arguing, as relevant here, that aggravator (c)(18)(A) was inappropriate in the context of his case.[5] The court of appeals agreed, reasoning that the aggravator was intended to apply to crimes of domestic violence in which "the identity of the victim and the victim's relationship to the defendant [bear on] the blameworthiness of the defendant's conduct or the defendant's degree of dangerousness."[6] Concluding that Tofelogo's crime was not the kind the aggravator was intended to address, the court of appeals held that the sentencing court erred in giving the factor any weight at all.[7]
The State petitioned for hearing, and we granted review.
III. STANDARDS OF REVIEW
"The existence or non-existence of an aggravating or mitigating factor is a mixed question of law and fact."[8] Determining whether the factor applies "involves a two-step process: the court must (1) assess the nature of the defendant's conduct, a factual finding, and then (2) make the legal determination of whether that conduct falls within the statutory standard."[9] "Any factual findings made by the court regarding the nature of the defendant's conduct are reviewed for clear error, but whether those facts establish that the conduct" falls within the factor's ambit "is a legal question."[10] In interpreting the scope of an aggravating factor, we apply our independent judgment, interpreting the statute "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[11]
If a factor is found to apply, the amount of weight to give it is committed to the sentencing court's discretion.[12] "[W]hen the issue is one of sentencing discretion - whether and how much a defendant's sentence should be adjusted on account of an *155 aggravating or mitigating factor - we will employ the 'clearly mistaken' standard of review."[13] Under this standard "the sentence will be modified only in those instances where the reviewing court is convinced that the sentencing court was clearly mistaken in imposing a particular sentence."[14] In making such a determination, we independently review the record.[15]
IV. DISCUSSION
A. Aggravator (c)(18)(A) By Its Plain Language Applies To Tofelogo's Crime.
Alaska Statute 12.55.155(c) lists factors that "shall be considered by the sentencing court if proven in accordance with this section"[16] and that "may allow imposition of a sentence above the presumptive range set out in AS 12.55.125." These so-called aggravators include the one central to this appeal: "the offense was a felony ... specified in AS 11.41 ['Offenses Against the Person'] and was committed against a spouse, a former spouse, or a member of the social unit made up of those living together in the same dwelling as the defendant."[17] Tofelogo stipulated to the applicability of this factor in his plea agreement, and by its terms it appears to apply. Tofelogo agreed to plead guilty to criminally negligent homicide, a felony "specified in AS 11.41";[18] moreover, the crime "was committed against" his roommate, ostensibly "a member of the social unit made up of those living together in the same dwelling as the defendant."[19] The superior court gave this stipulated factor "some weight" in sentencing.
For the reasons that follow, we conclude that the superior court correctly applied the aggravator to the facts of this case, and that the weight the court gave the aggravator did not result in a sentence that is clearly mistaken.
B. The Court Of Appeals Rejected A Literal Reading Of Aggravator (c)(18)(A).
The court of appeals agreed that "Tofelogo's case falls within the literal wording of aggravator (c)(18)(A)."[20] It nevertheless concluded that "the rationale of this aggravator does not apply to the facts of Tofelogo's case, and the sentencing judge should not have given the aggravator any weight."[21] The court began its analysis by stating that "[t]he crimes covered by aggravator (c)(18)(A) are a subset of the larger category of 'crimes involving domestic violence' - the category of offenses defined by AS 18.66.990(3) and (5)."[22] The court determined that the aggravator was therefore "based on the same rationale that prompted the legislature to enact the definition of 'crime involving domestic violence': the policy of altering various provisions of law to facilitate the prosecution and punishment of crimes that occur between people who are involved with or related to each other in specified ways."[23]
The court of appeals then discussed past decisions in which, analyzing the definition of "crime involving domestic violence," it had "pointed out that the literal wording of this definition encompasses more situations than the legislature intended - situations where *156 it does not make any sense to treat a crime differently based on the relationship between the defendant and the victim."[24] The court cited both Carpentino v. State[25] and Bingaman v. State ,[26] in which it had explained that the legislature's broad definition of "domestic violence," if read "literally, ... would cover many instances where the specified relationship between the defendant and the victim is irrelevant to assessing whether the defendant is atypically dangerous or whether the defendant's conduct is atypically blameworthy."[27] The court posed hypotheticals showing the definition's potential overbreadth: for example, an automobile accident that is categorized as a crime of domestic violence only because the victim, by chance, happens to fall under the broad definition of "household members" (the victim in the example is "the child of a former high school sweetheart").[28] The court concluded that such a result would contravene the "social policy underlying" the (c)(18)(A) aggravator: "to authorize courts to impose more severe sentences on defendants whose relationship to their victim makes the crime more blameworthy ," e.g., spouses and former spouses.[29] Referring to the aggravator's additional inclusion of "a member of the social unit made of those living together in the same dwelling as the defendant," the court cautioned that if it were "[i]nterpreted literally," it "would apply to a defendant who was convicted of felony assault for causing a traffic accident that resulted in injuries to other people" who included, "by chance, ... the defendant's former spouse, or ... another resident of the defendant's dormitory or barracks."[30] In such a case, the court reasoned, "the rationale behind aggravator (c)(18)(A) does not apply - because the identity of the victim and the victim's relationship to the defendant have essentially no bearing on the blameworthiness of the defendant's conduct or the defendant's degree of dangerousness."[31]
Summarizing, the court of appeals cited its earlier observation that "the 'hallmark' of domestic violence is conduct whose purpose is 'to coerce, control, punish, intimidate, or exact revenge within the context of an intimate relationship .' "[32] Crimes of domestic violence "are all implicitly premised on the assumptions that the defendant's conduct was directed at the victim, and that [their relationship] provided a motivation for the crime, or ... made the victim more vulnerable, or ... was otherwise a significant contributing factor in the crime."[33] Concluding that these "assumptions do not apply to Tofelogo's case," the court held that "the sentencing judge should not have given the aggravator any weight."[34]
C. The Plain Language Of Aggravator (c)(18)(A) Shows A Reasonable Purpose Not Contradicted By Legislative History.
Our disagreement with the court of appeals centers on its conclusion that aggravator (c)(18)(A) cannot be interpreted literally consistent with its purpose. We begin with the statutory language itself; we agree with the court of appeals that read literally it applies to Tofelogo's case.[35] As for the statute's purpose, the language reasonably implies a legislative intent to make more blameworthy crimes committed against not only spouses and former spouses but also persons in their own living spaces - where they may legitimately have a heightened expectation of safety and security,[36] especially with regard *157 to danger from members of their own "social unit."[37] Such a purpose - grounded in the language the legislature chose to use - is reasonable in and of itself. Finding a reasonable purpose does not require us to add implicit requirements such as those the court of appeals read into the aggravator: that the defendant and the victim also share a special, intimate, spouse-like relationship, and that the crime arose out of that relationship.[38] In fact, as the State points out, the court of appeals has in the past affirmed sentencing courts' application of aggravator (c)(18)(A) to living situations that did not have those characteristics.[39]
We follow a "sliding scale approach to statutory interpretation, in which 'the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.' "[40] To support the court of appeals' interpretation of (c)(18)(A), Tofelogo cites the legislative commentary that accompanied the aggravator's passage. The legislature noted that the factor
is applicable to crimes involving domestic violence. Its scope is restricted to crimes against the person (AS 11.41) directed against a spouse, a former spouse or a member of the social unit comprised of those living together in the same dwelling as the defendant. Its addition reflects a legislative determination that crimes against the person involving domestic violence represent one of the more serious criminal justice problems in Alaska.[41 ]
According to Tofelogo, this language evinces a legislative intent that the aggravator "be 'restricted' to violent crimes that are 'directed against' a spouse/former spouse or someone with whom the defendant lives, and that 'involve domestic violence.' " But we read the commentary as simply paraphrasing the aggravator's language, not narrowing its literal scope by a deliberate choice of slightly different words (e.g., "crimes ... directed against" the victim as opposed to crimes "committed against" the victim). Tofelogo advances no other legislative history to support his interpretation of (c)(18)(A), and the court of appeals cited none. The legislative history does not convince us that the aggravator should be read other than literally.
D. The Breadth Of Aggravator (c)(18)(A) Allows The Sentencing Court To Consider The Parties' Relationship When Weighing The Factor.
The (c)(18)(A) aggravator preexisted AS 18.66.990(3) 's definition of "crimes involving domestic violence" to include crimes "committed against a 'household member.' "[42] However, we agree with the court of appeals that the crimes covered by (c)(18)(A) are functionally a "subset" of those covered by the later definition, at least in the sense that the aggravator applies to fewer crimes than those covered by the definition and any crime *158 included in the aggravator necessarily falls within the definition as well.[43] "Household member" is broadly defined, including such categories as "adults or minors who live together or who have lived together," "adults or minors who are dating or who have dated," and "adults or minors who are related to each other up to the fourth degree of consanguinity."[44] The court of appeals has consistently held this definition to be broader than necessary to effectuate the domestic violence statutes' underlying rationale,[45] and for that reason it has decided that some situations technically covered - such as criminally negligent conduct that impacts relatives only by chance - should not be treated as crimes of domestic violence for purposes such as limiting a defendant's ability while on bail to return to a home shared with the victim[46] or requiring batterer's intervention treatment.[47]
But we disagree that aggravator (c)(18)(A) is overbroad as applied to Tofelogo's case. The statute provides that an aggravator, if proven, "shall be considered by the sentencing court" and "may allow imposition of a sentence above the presumptive range."[48] A finding that an aggravator applies does not dictate the aggravator's weight. Once the sentencing court has concluded that the facts bring the case within the aggravator's literal language, the weight the court gives the aggravator is a matter of discretion.[49] If the court finds, for example, that it was purely a matter of chance that the defendant and the victim were members of the same social unit "living together in the same dwelling," it may give the aggravator less weight than it would have if the defendant had directed the crime against an intimate partner for purposes of intimidation or coercion.
Take the example given by the court of appeals, in which a defendant "was convicted of felony assault for causing a traffic accident that resulted in injuries to other people[,]" including, "by chance, ... the defendant's former spouse, or ... another resident of the defendant's dormitory or barracks."[50] If these facts are proven, the court should consider the aggravator because by its plain language it applies; under the circumstances, however, the court may decide to give the aggravator little weight because, in the court of appeals' words, "the identity of the victim and the victim's relationship to the defendant have essentially no bearing on the blameworthiness of the defendant's conduct or the defendant's degree of dangerousness."[51] The tenuousness of the relationship goes to the weight of the aggravator, but it does not allow a court to ignore the aggravator's plain language in determining whether it applies.
E. The Sentencing Court Was Not Clearly Mistaken In Giving Aggravator (c)(18)(A) Some Weight.
The sentencing court discussed the basis for aggravator (c)(18)(A), noting the prevalence of domestic violence in society but observing that such crimes are not limited to family members: "It also includes people who are living together such as here." While emphasizing the "right to feel safe and secure in our own homes without someone who is living amongst us hurting us or killing us," the court differentiated Tofelogo's situation from one involving a spouse, girlfriend, or other family member; in such a case, the court said, it "wouldn't have batted an eye to give [Tofelogo] most of" the allowable maximum. In short, the court explicitly recognized the applicability of the factor, acknowledged that *159 the circumstances were not those of the typical domestic violence crime (where the factor might apply more forcefully), and because of the parties' relationship gave the factor only "some weight," "not a tremendous [amount] of weight." The court sentenced Tofelogo to six years (with two to serve), three years above the presumptive range for a first-felony, criminally negligent homicide, but well below the allowable ten-year maximum.[52]
This sentence was supported by the record. As the sentencing court noted, Tofelogo was swinging a very sharp, 12-inch-long knife in close proximity to Fathke, his roommate, in an enclosed, shared living space. Tofelogo specifically acknowledged the risk, whether jokingly or not; he reportedly told Fathke, "I'm a killer, dude. You got to watch out." There is no indication that Fathke desired this interaction: he was lying on his bed and stood up just before he was stabbed. Regardless of Tofelogo's intent, his willingness to engage in this dangerous and intimidating behavior may certainly be read as implicating the aggravating factor's purpose.
Given the court's reasoned consideration of the aggravator's purpose, its applicability to the facts of this case, and the resulting sentence well within permissible bounds, we cannot say that the sentence was clearly mistaken.
F. A Remand Is Necessary For Consideration Of Tofelogo's Other Sentencing Issue On Appeal.
Tofelogo appealed not only the sentencing court's application of aggravator (c)(18)(A), but two other issues as well: (1) the sentencing court's rejection of the proposed "least serious" mitigator,[53] which the court of appeals affirmed,[54] and (2) the sentencing court's decision to give "unjustified weight to Tofelogo's prior criminal history," which the court of appeals did not reach "[g]iven the fact that Tofelogo must be re-sentenced," and "Tofelogo's attorney [could] address this matter at the resentencing."[55] Our disposition of the petition would reinstate and affirm the sentence imposed by the superior court, except that the "prior criminal history" issue remains undecided and may affect the sentence. We must therefore remand to the court of appeals for its further consideration of that issue. Depending on its resolution of that issue, the court of appeals may then either remand to the superior court for re-sentencing consistent with this opinion or reinstate and affirm the sentence.
V. CONCLUSION
We REVERSE the decision of the court of appeals and REMAND for consideration of the "prior criminal history" issue.

AS 12.55.155(c)(18)(A).

Tofelogo v. State , 408 P.3d 1215, 1216-20 (Alaska App. 2017).

See AS 12.55.125(d)(2)(B) (providing for presumptive term of one to three years "if the offense is a first felony conviction, the defendant violated AS 11.41.130, and the victim was ... 16 years of age or older").

See AS 12.55.125(d) (providing that "a defendant convicted of a class B felony may be sentenced to a definite term of imprisonment of not more than 10 years"); AS 12.55.155(a)(1) (providing that if "the low end of the presumptive range is four years or less, the court ... may increase the active term of imprisonment up to the maximum term of imprisonment for factors in aggravation").

See Tofelogo , 408 P.3d at 1216. Tofelogo also argued that the sentencing court erred by relying on his prior criminal history, but the court of appeals did not reach that issue and it is not before us on the State's petition. See id. at 1220.

Id. at 1219.

Id . at 1220.

Michael v. State , 115 P.3d 517, 519 (Alaska 2005).

Id.

Id.

Parson v. State, Dep't of Revenue, Alaska Hous. Fin. Corp ., 189 P.3d 1032, 1036 (Alaska 2008).

See, e.g. , Woods v. State , 667 P.2d 184, 188 (Alaska 1983) ("The weight to be assigned to this aggravating factor is a question which is committed to the sentencing court's discretion.").

Lepley v. State , 807 P.2d 1095, 1099 n.1 (Alaska App. 1991).

McClain v. State , 519 P.2d 811, 813-14 (Alaska 1974) ; see also State v. Wentz , 805 P.2d 962, 964-68 (Alaska 1991) ("[T]he sentence imposed by the trial court may be reversed only where the appellate court, after independent review of the record, 'is convinced that the sentencing court was clearly mistaken in imposing a particular sentence.' " (quoting State v. Graybill , 695 P.2d 725, 729 (Alaska 1985) )).

McClain , 519 P.2d at 813.

AS 12.55.155(f) sets out the procedure by which the State is required to present a listed factor for the sentencing court's consideration.

AS 12.55.155(c)(18)(A).

AS 11.41.130 defines criminally negligent homicide and classifies it as a class B felony.

See AS 12.55.155(c)(18)(A).

Tofelogo v. State , 408 P.3d 1215, 1220 (Alaska App. 2017).

Id.

Id. at 1217.

Id.

Id.

42 P.3d 1137 (Alaska App. 2002) (opinion on rehearing).

76 P.3d 398 (Alaska App. 2003).

Tofelogo , 408 P.3d at 1217-18.

Id. at 1218 (quoting Bingaman , 76 P.3d at 412 ).

Id. at 1219 (emphasis added).

Id. (quoting AS 12.55.155(c)(18)(A) ).

Id.

Id. (emphasis added) (quoting Bates v. State , 258 P.3d 851, 862 (Alaska App. 2011).

Id. at 1219-20.

Id. at 1220.

See id.

The State cites several cases recognizing "the added seriousness when an offense is committed in the victim's home," including Amarok v. State , 789 P.2d 377, 380 (Alaska App. 1990) (observing that while sexual assault was a "serious threat to [the victim's] personal safety and personal privacy[,] ... [the accompanying] burglary violated [the] victim's significant and distinctly different right to privacy in her own home, thereby resulting in incrementally greater harm").

The sentencing court recognized this as the "right to feel safe and secure in our own homes without someone who is living amongst us hurting us or killing us."

Tofelogo , 408 P.3d at 1219.

See, e.g. , Pruett v. State , 742 P.2d 257, 259, 262 (Alaska App. 1987), (rejecting argument that social unit "factor should be limited to spouses and children" and affirming sentencing court's application of it to defendant's abuse of her live-in housekeeper), overruled on other grounds by State v. Wentz , 805 P.2d 962 (Alaska 1991) ; Komakhuk v. State , 719 P.2d 1045, 1046, 1048 (Alaska App. 1986) (holding that sentencing judge "did not abuse his discretion in finding that AS 12.55.155(c)(18) covers a living situation such as" that of defendant who shot his two adult housemates).

Adamson v. Municipality of Anchorage , 333 P.3d 5, 11 (Alaska 2014) (quoting McDonnell v. State Farm Mut. Auto. Ins. Co. , 299 P.3d 715, 721 (Alaska 2013) ).

Senate Journal Supp. No. 44 at 25, 1980 Senate Journal 1418; House Journal Supp. No. 79 at 26, 1980 House Journal 1749.

Aggravating factor (c)(18)(A) was first codified in 1980. See Ch. 102, §§ 39-41, SLA 1980. The definition of "crimes involving domestic violence" was codified in 1996. See Ch. 64, § 33, SLA 1996.

See Tofelogo , 408 P.3d at 1217 (citing AS 18.66.990(5)(A) and (B) ).

AS 18.66.990(5)(B), (C), (E).

See, e.g. , Bingaman v. State , 76 P.3d 398, 407-12 (Alaska App. 2003) ; Carpentino v. State , 42 P.3d 1137, 1140-41 (Alaska App. 2002).

See Tofelogo , 408 P.3d at 1218-19 (citing Williams v. State , 151 P.3d 460, 467-68 (Alaska App. 2006) ).

See id. at 1219 (citing Cooper v. District Court , 133 P.3d 692, 707 (Alaska App. 2006) ).

AS 12.55.155(c) (emphasis added).

See , e.g. , Woods v. State , 667 P.2d 184, 188 (Alaska 1983) ; Lepley v. State , 807 P.2d 1095, 1099 n.1 (Alaska App. 1991).

Tofelogo , 408 P.3d at 1219 (citing AS 11.41.220(a)(1)(B) ).

Id.

See AS 12.55.125(d).

AS 12.55.155(d)(9) ("the conduct constituting the offense was among the least serious conduct included in the definition of the offense").

Tofelogo , 408 P.3d at 1216.

Id. at 1220.