NOTICE

*The text of this opinion can be corrected before the opinion is published in the <u>Pacific Reporter</u>. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

|  |  |
|---|---|
| JEREMY TODD ANDERSON, | Court of Appeals No. A-13676 |
| Appellant, | Trial Court No. 3KN-14-00665 CR |
| v. | |
| STATE OF ALASKA, | **O P I N I O N** |
| Appellee. | No. 2774 — March 29, 2024 |

Appeal from the Superior Court, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Jane B. Martinez, Law Office of Jane B. Martinez, LLC, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Madison M. Mitchell, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge ALLARD.

This case is before us a second time, now on Jeremy Todd Anderson's direct appeal of his sentence. Pursuant to a plea agreement with the State, Anderson

was convicted of one consolidated count of second-degree sexual abuse of a minor.[1] He now appeals various aspects of his sentence — namely the sentencing court's finding that his offense constitutes a "crime involving domestic violence" and the court's imposition of several probation conditions. For the reasons discussed in this appeal, we affirm the superior court's designation of Anderson's offense as a "crime involving domestic violence," but we remand for reconsideration of several probation conditions.

*Background facts and proceedings*

On May 8, 2014, fifteen-year-old K.H. reported to one of her high school teachers that she had been having an ongoing sexual relationship with her music teacher, Jeremy Anderson, since February of that year. The troopers were contacted, and an investigation ensued. Based on the results of that investigation, Anderson was indicted on fourteen counts of first-degree sexual abuse of a minor and two counts of second-degree sexual abuse of a minor.[2]

At the grand jury proceeding, K.H. testified regarding the nature and frequency of her sexual encounters with Anderson. K.H. testified that Anderson had started acting flirtatiously towards her in December 2013. Anderson's "flirtation" continued, and the pair engaged in penetrative sexual activity for the first time in February 2014. K.H. testified that they engaged in such sexual activity around twenty to thirty times between February 2014 and early May 2014. The sex occurred on school grounds, generally in the choir room closet or the band room closet. Even though K.H. was below the age of sexual consent under Alaska law, she testified that she personally viewed the sex acts as "consensual." She testified that the last time she and Anderson had sex, she told him she did not want to because she felt guilty, but Anderson pressured

---

[1]    AS 11.41.436(a)(1).

[2]    AS 11.41.434(a)(3)(B) and AS 11.41.436(a)(5)(B), respectively.

her to have sex with him despite her initial unwillingness. (The later presentence report, which was based on K.H.'s investigative interview at the child advocacy center, contained additional indications that K.H. viewed the sex as coercive.)

During the pretrial proceedings, it became clear that the State intended to introduce various admissions of wrongdoing that Anderson had made to his wife, Jennifer Anderson, during the course of the investigation. In response, Anderson asserted his marital communications privilege under Alaska Evidence Rule 505(b) to exclude evidence of any confidential communications between himself and his wife.[3] Jennifer Anderson also asserted her spousal immunity privilege under Evidence Rule 505(a), and she separately asserted her own marital communications privilege under Evidence Rule 505(b).[4]

The superior court rejected these assertions of privilege. The court concluded that neither marital privilege applied at Anderson's trial because his alleged sexual abuse of K.H. was a "crime involving domestic violence," an express exception to the invocation of the privilege in a criminal proceeding.[5] We affirmed the superior court's decision on interlocutory review, as we explain in more detail below.[6]

Anderson subsequently entered into a plea agreement with the State. Under the terms of the agreement, Anderson pleaded guilty to one consolidated count of second-degree sexual abuse of a minor.[7] He also agreed to a sentence of 30 years

---

[3]  Alaska R. Evid. 505(b).

[4]  Alaska R. Evid. 505(a)-(b).

[5]  Alaska R. Evid. 505(a)(2)(D)(v), (b)(2)(a).

[6]  *Anderson v. State*, 436 P.3d 1071, 1077, 1080 (Alaska App. 2018).

[7]  AS 11.41.436(a)(1) ("An offender commits the crime of sexual abuse of a minor in the second degree if, . . . being 17 years of age or older, the offender engages in sexual penetration with a person who is 13, 14, or 15 years of age and at least four years younger than the offender[.]").

with 10 years suspended and a 15-year term of probation.[8] The probation conditions were left open to the court.

The presentence report included a factual narrative of Anderson's offense, designated it a crime involving domestic violence, and proposed twenty-six special probation conditions. In a sentencing memorandum, Anderson objected to the domestic violence designation. Anderson separately filed several objections to the proposed probation conditions.

At sentencing, the superior court imposed the agreed-upon sentence. The court modified several probation conditions in response to Anderson's objections but left the domestic violence designation in place.

Anderson now appeals the designation of his crime as a "crime involving domestic violence" in the presentence report and judgment. He also challenges several probation conditions.

*Our decision in <u>Anderson v. State</u>*

In *Anderson v. State* (*Anderson I*), this Court upheld the superior court's determination that Anderson and his wife could not invoke the marital privilege exception at trial because Anderson's alleged crime was a "crime involving domestic violence" as that term is defined in AS 18.66.990(3) and (5).[9] Because Anderson asks us to overturn that holding, we explain our decision in *Anderson I* in more detail.

___

[8] Anderson agreed to three aggravating factors: that his conduct was among the most serious included within the definition of the offense (AS 12.55.155(c)(10)); that he was convicted of sexual abuse of a minor and was 10 or more years older than K.H. (AS 12.55.155(c)(18)(E)); and that the offense was a crime against the person and occurred on school grounds (AS 12.55.155(c)(32)). As part of his plea agreement, Anderson waived his right to a jury trial on these aggravating factors under *Blakely v. Washington*, 542 U.S. 296 (2004).

[9] *Anderson*, 436 P.3d at 1077-80.

In the litigation leading up to our decision in *Anderson I*, both Anderson and his wife attempted to invoke one or both of the marital privileges codified in Evidence Rule 505(a) (the spousal immunity privilege) and 505(b) (the confidential marital communications privilege).[10] The superior court rejected these attempts on the grounds that the evidence rules prohibit application of either privilege in a criminal proceeding in which one spouse is charged with a crime involving domestic violence, and that Anderson's alleged offense was a crime involving domestic violence as defined in AS 18.66.990.[11]

Alaska Statute 18.66.990(3) defines a "crime involving domestic violence" as including any crime against a person under AS 11.41 (which includes sexual abuse of a minor) if the crime is committed by one "household member" against another "household member."[12] Alaska Statute 18.66.990(5)(C) and (D) define "household member" to include "adults or minors who are dating or who have dated," as well as "adults or minors who are engaged in or who have engaged in a sexual relationship."

Based on K.H.'s grand jury testimony, the superior court ruled that Anderson and K.H. qualified as "household members" under AS 18.66.990(5)(C) and (D) because they had been engaged in a "sexual relationship" and had been "dating" for several months. The court therefore concluded that Anderson's alleged sexual abuse of K.H. constituted "crimes involving domestic violence" for purposes of precluding the use of either marital privilege at Anderson's criminal trial.

---

[10]  *Id.* at 1074; *see also* Alaska R. Evid. 505(a)(1) ("A spouse shall not be examined for or against the other spouse without the consent of the spouse to be examined."); Alaska R. Evid. 505(b)(1) ("Neither during the marriage nor afterwards shall either spouse be examined as to any confidential communications made by one spouse to the other during the marriage, without the consent of the other spouse.").

[11]  *Anderson*, 436 P.3d at 1076; *see also* Alaska R. Evid. 505(a)(2)(D)(v), (b)(2)(A).

[12]  AS 18.66.990(3)(A); *see also* 11.41.436(a)(1).

The superior court's rulings originally applied only to Anderson, because he was the first to raise the privilege issue. After the superior court denied his motion, Anderson petitioned this Court for review. We declined to exercise our power of discretionary review because the case was pending trial and Anderson had adequately preserved the issue for any future appeal.

Following our denial, however, Jennifer Anderson filed her own motion in the superior court asserting marital privilege. After the superior court rejected Jennifer Anderson's motion, she petitioned this Court for review. We granted review because we recognized that Jennifer Anderson's rights as a witness-spouse could be adversely affected if we denied interlocutory review of her claim.[13]

As we explained in *Anderson I*, "K.H.'s grand jury testimony [made] clear that, from K.H.'s perspective at least, she was engaged in a sexual or dating relationship with Anderson — a relationship that spanned many months and involved multiple intimate encounters, not all of which were sexual in nature."[14] In other words, there was no dispute in *Anderson I* that if K.H. had been an adult, her relationship with Anderson would qualify as dating or a sexual relationship for purposes of AS 18.66.990(5).

But Jennifer Anderson argued that K.H. and Anderson were not dating or in a sexual relationship for purposes of AS 18.66.990(5) "because K.H. could not lawfully be in a sexual relationship with Anderson given their respective ages."[15] We rejected this argument for three main reasons. First, we explained that the underlying legislative intent of the 1996 legislation establishing the definition of a crime involving domestic violence "was to broaden the definition of domestic violence so as to ensure legal protections to all persons who were rendered particularly vulnerable by virtue of

---

[13]   *Anderson*, 436 P.3d at 1077.

[14]   *Id.* at 1078.

[15]   *Id.* at 1079.

their intimate relationship with their abuser."[16] Second, we noted that the legislature defined "household member" to include "adults or minors who are engaged in or who have engaged in a sexual relationship" — thereby suggesting that "a relationship between an adult and a minor can exist for purposes of extending legal protections to those minors."[17] And third, we were guided by the principle that because the marital privileges operate "to impede the normal truth-seeking function of court proceedings, they must be 'strictly construed' by the courts."[18]

Judge Mannheimer dissented, arguing that because the law does not recognize a child's ability to consent to sexual activity with an adult, a child cannot be in a "sexual relationship" with an adult as a matter of law.[19] Judge Mannheimer asserted that this Court's reasoning "implicitly rest[ed] on the notion that some children have the intellectual and emotional maturity to make a meaningful decision about [whether to engage in a sexual relationship with an adult]."[20]

---

[16]  *Id.*; *see also* SLA 1996, ch. 64, § 33; Sponsor Statement from Representative Sean R. Parnell, regarding House Bill 314 (Feb. 12, 1996).

[17]  *Anderson*, 436 P.3d at 1079. We note that there are other "household member" definitions that are structured similarly and that clearly apply to adults and minors in relationship to one another. *See, e.g.*, AS 18.66.990(5)(E) ("'[H]ousehold member' includes . . . adults or minors who are related to each other up to the fourth degree of consanguinity."); AS 18.66.990(5)(F) ("'[H]ousehold member' includes . . . adults or minors who are related or formerly related by marriage.").

[18]  *Anderson*, 436 P.3d at 1075 (citing *Daniels v. State*, 681 P.2d 341, 344 (Alaska App. 1984)).

[19]  *Id.* at 1081 (Mannheimer, C.J., dissenting).

[20]  *Id.*

*Why <u>Anderson I</u> was correctly decided*

In this appeal, Anderson seeks to relitigate the same issue we decided in *Anderson I*, albeit in a slightly different context. Alaska Criminal Rule 32(e) provides that if the prosecution claims at sentencing that the defendant was convicted of a "crime involving domestic violence," as defined by AS 18.66.990(3) and (5), the written judgment must "set forth whether the offense is a crime involving domestic violence" and "[a] factual and legal determination supporting this finding must be made on the record."[21]

After receiving the presentence report, which stated that Anderson's crime was a crime involving domestic violence, Anderson's attorney objected to the designation. The sentencing court, relying on our decision in *Anderson I*, rejected Anderson's argument and included the domestic violence demarcation on the judgment.

Anderson now appeals the superior court's decision to demarcate his crime as one of "domestic violence" in the presentence report and the judgment, arguing that a minor cannot legally engage in sexual activity with an adult, and therefore cannot be in a sexual relationship with an adult for purposes of AS 18.66.990(5). Although Anderson attempts to distinguish the present appeal from *Anderson I* on the grounds that it involves Alaska Criminal Rule 32(e), rather than the marital privilege exceptions contained in Evidence Rule 505, both rules rely on the same definitions provided in AS 18.66.990(5), and thus the issue Anderson raises is the same issue we already decided in *Anderson I*. [22]

---

[21]  Alaska R. Crim. P. 32(e).

[22]  *Id.* Criminal Rule 32(e) provides:

**Judgment for Crimes Involving Domestic Violence.** In a case in which the defendant is convicted of an offense listed in AS 18.66.990(3) and the prosecution claims at sentencing that the offense is a crime involving domestic violence, the written judgment must set forth whether the offense is a crime involving domestic violence as defined in AS 18.66.990(3) and

Under the doctrine of *stare decisis*, an appellate court will overrule one of its prior decisions only when (1) the court is "clearly convinced that [its decision] was originally erroneous," or (2) the court is convinced that its prior decision "is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent."[23]

Anderson has not addressed the doctrine of *stare decisis* in his appellate briefing.[24] We acknowledge, however, that we denied Anderson's original request for interlocutory review "because Mr. Anderson had adequately preserved the issue for any future appeal should this ruling materially affect the resolution of his criminal case."[25] We granted review only when it was requested by Jennifer Anderson, and Anderson did not file any appellate briefing in that case. Although this procedural history does not excuse Anderson's failure to address the doctrine of *stare decisis* in the present appeal, which applies regardless of whether the current litigant was a party to the past litigation, we cannot ignore the obvious unfairness that would result if we refused to consider arguments we previously deemed "adequately preserved . . . for any future appeal." We therefore take the time to address Anderson's arguments and to explain in more detail why *Anderson I* was correctly decided.

Anderson's primary argument on appeal is the same one articulated by Judge Mannheimer's dissenting opinion in *Anderson I*: that because a child cannot

---

(5). A factual and legal determination supporting this finding must be made on the record.

[23] *State v. Fremgen*, 914 P.2d 1244, 1245 (Alaska 1996) (quoting *State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986)).

[24] *See State v. David N.J.*, 19 A.3d 646, 669 n.34 (Conn. 2011) (declining to consider defendant's arguments that a prior case was wrongly decided "in the absence of adequate briefing addressing the stare decisis considerations attendant to overruling" that case).

[25] *Anderson*, 436 P.3d at 1076.

legally consent to sexual activity with an adult, a child and an adult cannot be in a "sexual relationship" for purposes of AS 18.66.990(5).[26]

We agree with Anderson that the phrase "sexual relationship" as used in AS 18.66.990(5) implies the existence of consent.[27] As the dissent pointed out in *Anderson I*, it would obviously be wrong to say that two people are in a "sexual relationship" when a man has held a woman captive and sexually assaulted her repeatedly over a number of days.[28]

The problem with this analogy, however, is that K.H. was not held captive. Rather, K.H. testified at the grand jury that she viewed all but her last interaction with Anderson as "consensual." K.H.'s subjective belief that she was consenting is, of course, irrelevant for purposes of determining whether Anderson committed the crime of sexual abuse of a minor.[29] But courts have often drawn a distinction between "legal" consent and "factual" (or "actual") consent: legal consent refers to whether the law recognizes the victim's ability to consent to sexual activity; factual consent refers to whether the victim subjectively believes they are consenting.

For example, the Supreme Court of Illinois has explained that, "[a]lthough juveniles may factually consent to intercourse, the law . . . treats them as incapable of giving legal consent."[30] Indeed, this Court itself has previously acknowledged this

---

[26] *Id.* at 1081 (Mannheimer, C.J., dissenting).

[27] *Id.* at 1083.

[28] *Id.* at 1082.

[29] *See State v. Jackson*, 776 P.2d 320, 328 (Alaska App. 1989) ("It is precisely because the law deems children to be incapable of rendering meaningful consent in such situations that the offense [of statutory rape] has been defined to make consent irrelevant.").

[30] *People v. Lloyd*, 987 N.E.2d 386, 392 (Ill. 2013) (alteration in original) (quoting Russell L. Christopher & Kathryn H. Christopher, *The Paradox of Statutory Rape*, 87 Ind. L.J. 505, 515 (2012)).

distinction, explaining that although the law provides that a minor cannot legally consent to sex with an adult, cases of statutory rape can "involve[] mutually consensual conduct."[31] Similarly, we have noted that "[s]exual penetration or sexual contact with a minor under the age of 16 is unlawful even if the minor initiates the sexual act and fully consents to it."[32]

Federal courts have addressed this question most directly in the context of determining whether state convictions for statutory rape constitute a "crime of violence" for purposes of federal sentencing law. Discussing this topic, the Fifth Circuit wrote that "a 16 year old female can consent factually — if not legally — to sexual contact, thereby diminishing the likelihood that the offense will cause serious physical injury."[33] The Tenth Circuit similarly explained, "The absence of legal consent does not preclude the possibility, in the context of statutory rape, of factual consent."[34] And the Ninth Circuit held that although "the 'non-consent of the victim' is the 'touchstone' for [determining whether the defendant's crime was a crime of violence], it is the victim's *actual* non-consent that counts."[35]

---

[31]  *Jackson*, 776 P.2d at 328.

[32]  *Miller v. State*, 44 P.3d 157, 159 (Alaska App. 2002).

[33]  *United States v. Houston*, 364 F.3d 243, 247 (5th Cir. 2004).

[34]  *United States v. Wray*, 776 F.3d 1182, 1188 (10th Cir. 2015).

[35]  *Valencia v. Gonzales*, 439 F.3d 1046, 1051 (9th Cir. 2006); *see also Xiong v. INS*, 173 F.3d 601, 605-07 (7th Cir. 1999). We acknowledge that other federal circuit courts reached the opposite conclusion, holding that statutory rape is a "crime of violence." With the exception of one circuit, however, the question of whether statutory rape was a crime of violence did not turn on the absence of the victim's legal consent. Instead, the courts reasoned that the inherent power imbalance between the child victim and the adult perpetrator created a substantial risk of physical force. *See Chery v. Ashcroft*, 347 F.3d 404, 407-09 (2d Cir. 2003); *United States v. Velazquez-Overa*, 100 F.3d 418, 421-23 (5th Cir. 1996); *United States v. Rodriguez*, 979 F.2d 138, 141 (8th Cir. 1992); *United States v. Reyes-Castro*, 13 F.3d 377, 379 (10th Cir. 1993); *Ramsey v. INS*, 55 F.3d 580, 583 (11th Cir. 1995). *But see Aguiar v. Gonzales*, 438 F.3d 86, 90 (1st Cir. 2006) (holding that

None of the cases cited above cast doubt upon the rule that a child cannot legally consent to sexual activity with an adult. What the cases make clear instead is that a child's subjective consent may nonetheless be relevant to other legal questions. As we held in *Anderson I*, a child's subjective consent is relevant to determining the existence of a dating or sexual relationship because the legislature's underlying intent in enacting the domestic violence moniker was "to broaden the definition of domestic violence so as to ensure legal protections to all persons who were rendered particularly vulnerable by virtue of their intimate relationship with their abuser."[36]

We think it clear that a child who believes they are in a consensual dating or sexual relationship with an adult is "rendered particularly vulnerable by virtue of their intimate relationship with their abuser."[37] Such a victim may become reliant on their abuser for financial and emotional support; may disclose intimate details about their personal life; may become invested in the continuance of the relationship; and may distance themselves from their existing support structure — all of which may make it more difficult for the victim to disclose the abuse to family, friends, or law enforcement officers. The fact that the minor cannot legally consent to the underlying sexual activity does not change the relationship's impact on the minor's life.

Anderson does not explain why his chosen definition of consent — *i.e.*, legal consent — would be consistent with the legislative intent of protecting particularly vulnerable victims. Instead, Anderson repeats the assertion in Judge Mannheimer's dissent in *Anderson I* that our reasoning "implicitly rests on the notion that some

---

statutory rape is a "crime of violence" and explaining that its reasoning was based "primarily on the fact that, under the statute, a victim cannot legally consent to the prohibited conduct").

[36] *Anderson v. State*, 436 P.3d 1071, 1079 (Alaska App. 2018).

[37] *See id.*

children have the intellectual and emotional maturity to make a meaningful decision about [engaging in sexual activity with an adult]."[38]

This is not true. We have never suggested that children possess the intellectual and emotional maturity to make a meaningful decision about engaging in sexual activity with an adult. Our reasoning rests instead on the well-established fact that some children *do* make decisions about engaging in sexual activity with adults, even when they lack the intellectual and emotional maturity to do so, and on the sound policy judgment that a child who makes such a decision should be entitled to the same protections as an adult.

For all these reasons, we reject Anderson's request that we overturn *Anderson I*.[39]

We note that Anderson also argues that designating his conviction as a crime involving domestic violence on his judgment and presentence report "will mislead persons reading the document to believe this was a different sort of offense and may result in any number of misunderstandings and missed opportunities for rehabilitation." Anderson further asserts that "it may be impossible for [him] to

---

[38] *Id.* at 1081 (Mannheimer, C.J., dissenting).

[39] Our decision in *Anderson I* was based on K.H.'s grand jury testimony. In his appellate brief, Anderson criticizes the superior court for not allowing the record to be further developed on remand. He notes that he requested an evidentiary hearing on this issue, and that the superior court denied it. To the extent Anderson is now arguing we should remand for an evidentiary hearing to determine if K.H. actually consented, we conclude that this issue was not preserved. Anderson's request for an evidentiary hearing occurred shortly after *Anderson I* was issued and before Anderson pleaded guilty. When the superior court denied the request for an evidentiary hearing, the court stated that it would be willing to revisit the issue depending on how the evidence unfolded at trial. Anderson never renewed his request for an evidentiary hearing after he pleaded guilty, and although Anderson objected to the domestic violence designation in the presentence report, he did so only on legal grounds — the same grounds he now raises on appeal.

participate in certain programs, reside at particular locations, or gain employment if there is a misleading 'domestic violence' designation on his record."

Anderson's argument captures a potential problem with the legislature's broad definition of domestic violence when applied in certain circumstances. As this Court has previously acknowledged, "[T]he legislature's definition of 'domestic violence' is worded so broadly that, if one were to read this definition literally, it would cover many instances where the specified relationship between the defendant and the victim is irrelevant to assessing whether the defendant is atypically dangerous or whether the defendant's conduct is atypically blameworthy."[40]

For this reason, both this Court and the Alaska Supreme Court have acknowledged that the legislature's broad definition may be limited by operation of other legal principles. For example, in *State v. Tofelogo*, our supreme court addressed the sentencing aggravator that a defendant's crime was one of domestic violence and held that, although a court cannot ignore the plain language of the aggravator in determining whether it applies, a court may "give the aggravator less weight than it would have if the defendant had directed the crime against an intimate partner for purposes of intimidation or coercion."[41] Similarly, in *Bingaman v. State*, this Court held that even when a defendant's prior act of domestic violence is admissible for propensity purposes under Alaska Evidence Rule 404(b)(4), courts must still determine whether the evidence is admissible under Evidence Rule 403 — *i.e.*, that its probative value is not outweighed by its unfairly prejudicial effect — before admitting the evidence at

---

[40] *Tofelogo v. State*, 408 P.3d 1215, 1217 (Alaska App. 2017), *rev'd on other grounds in State v. Tofelogo*, 444 P.3d 151 (Alaska 2019); *see also Bingaman v. State*, 76 P.3d 398, 407-08 (Alaska App. 2003) (recognizing potential problems with the legislature's broad definition of domestic violence); *Carpentino v. State*, 42 P.3d 1137, 1140-41 (Alaska App. 2002) (same).

[41] *Tofelogo*, 444 P.3d at 158.

trial.[42] Alaska courts, in other words, have recognized that the legislature's broad definition of domestic violence must sometimes be limited by the operation of other legal rules and doctrines when strict application would lead to unfair results.

But Anderson has not identified any legal rule or doctrine that might limit the application of Criminal Rule 32(e) in this case. And he does not address the history or the purpose of the rule in his briefing. Moreover, Anderson has not pointed to any specific "programs" or "opportunities for rehabilitation" to which he would otherwise be entitled, but is likely to be denied because his crime has been designated as one of domestic violence. Nor has he pointed to any residences or employment usually available to a felon and convicted sex offender, but not available to someone convicted of a crime involving domestic violence. His concerns about the consequences of his designation remain wholly speculative given the seriousness of the underlying crime for which he has been convicted.

We note that Alaska Criminal Rule 32(e) was enacted by the Alaska Supreme Court, not the legislature. In 1996, the same year that the legislature enacted its definition of "crimes involving domestic violence," the legislature also expanded the definition of "serious offense" to include "crimes involving domestic violence," broadening the information that a criminal justice agency could provide to an interested party.[43] The Department of Public Safety then apparently contacted the court system, requesting that the court include a "domestic violence" demarcation on the judgment for each conviction.[44] In response to this request, the Criminal Rules Committee drafted

---

[42]  *Bingaman*, 76 P.3d at 413-14.

[43]  *See* former AS 12.62.160(b)(10) (1996); former AS 12.62.900(23) (1996); *see also* SLA 1996, ch. 64, § 33.

[44]  Letter from Del Smith, Deputy Commissioner of the Department of Public Safety, to Arthur Snowden, Administrative Director of the Alaska Court System, regarding changes to Alaska R. Crim. P. 32 (May 1, 1996).

a new section to Criminal Rule 32 that eventually became Criminal Rule 32(e).[45] Thus, it appears that the rule was intended primarily to facilitate the Department of Public Safety's performance of a ministerial function.

Given Anderson's failure to discuss the history and the purpose of Criminal Rule 32(e), his failure to identify a legal principle that might limit the applicability of the rule, and his failure to identify any specific opportunities that he might lose through application of the rule, we decline to deviate from a literal application of the rule in this case.

*Anderson's challenges to his probation conditions*

Anderson also renews several challenges to his probation conditions. The State concedes that several conditions should be remanded for reconsideration.[46] We begin with the mental health conditions, about which the parties disagree, and then address the conditions which the parties agree require further proceedings.

---

[45] *See* Minutes of Criminal Rules Committee (Dec. 6, 1996); SCO 1289 (dated Sept. 4, 1997; eff. Jan. 15, 1998); *see also* SCO 1464 (dated Mar. 5, 2002; eff. Mar. 5, 2002) (amending the rule to its current form). We note that the prosecutor must claim that the offense qualifies as a crime involving domestic violence in order to trigger application of the rule. *See* Alaska R. Crim. P. 32(e) ("In a case in which the defendant is convicted of an offense listed in AS 18.66.990(3) and *the prosecution claims* at sentencing that the offense is a crime involving domestic violence, the written judgment must set forth whether the offense is a crime involving domestic violence as defined in AS 18.66.990(3) and (5).") (emphasis added); *see also* Alaska R. Crim. P. 3(d) (requiring the complaint to specify that the offense is a crime of domestic violence if "the prosecuting authority intends to claim that the alleged offense is a crime involving domestic violence as defined in AS 18.66.990(3) and (5)"); Alaska R. Crim. P. 7(c)(2)(D) (requiring the indictment to specify that a particular offense is a crime involving domestic violence if "the prosecution claims that the alleged offense is a crime involving domestic violence as defined in AS 18.66.990(3) and (5)").

[46] *Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (requiring an appellate court to independently assess whether a concession of error "is supported by the record on appeal and has legal foundation").

First, Anderson challenges Special Conditions of Probation Nos. 14 and 15, which require him to complete a mental health assessment and actively participate in and successfully complete all recommended programs, counseling, and treatment. Anderson contends that these conditions are invalid because the record is "void" of any mental health issues and the court was only speculating about the possibility that he suffered from an undiagnosed mental health condition. The State responds that, given the circumstances of Anderson's arrest, a professional mental health assessment would further his rehabilitation and reintegration.

We conclude that the superior court could reasonably find that a mental health assessment was appropriate and reasonably related to Anderson's rehabilitation. On the day Anderson's criminal conduct was reported to law enforcement, he called his wife, told her he had an inappropriate relationship with a student, and threatened suicide. The next day, troopers found Anderson slumped over in a still running vehicle. There were pills and empty liquor bottles in and around the vehicle, as well as a note addressed to Anderson's wife on the cupholder area. Anderson was unconscious and had vomited on the driver's door and center console. Paramedics were called, and medical testing revealed oxycodone, benzodiazepines, and alcohol in Anderson's blood. After his release from medical care, Anderson was briefly transferred to the Alaska Psychiatric Institute, and then arrested. Given these facts, the court did not abuse its discretion in concluding that a mental health evaluation to determine whether Anderson required further treatment was appropriate.[47]

Second, Anderson challenges Special Condition of Probation No. 9, which requires Anderson to provide to his probation officer "any and all [computer] passwords or access codes" in order to allow the probation officer to "monitor compliance with the court's conditions of probation and promote rehabilitation." Anderson contends that

---

[47] *See Allen v. Anchorage*, 168 P.3d 890, 895 (Alaska App. 2007) (reviewing conditions of probation for abuse of discretion).

the requirement that he provide "any and all" passwords or access codes could be construed to require him to provide access information for his bank accounts and other sites that have no relation to his offense. He thus contends that the condition is overly broad and violates his right to privacy under the Alaska Constitution.

The State agrees that, given Anderson's right to privacy, this language must be narrowed. The State acknowledges that, while Anderson used his work email to converse inappropriately with K.H. prior to initiating a sexual relationship with her, he was not charged with any crime related to his use of the internet nor was there any indication that he viewed or purchased illicit materials or watched them with K.H.[48]

This condition also requires Anderson to submit to a search of his computer, residence, or vehicle at the direction of a probation officer "for the presence of communications with minors" (a provision to which Anderson agreed). Consistent with this requirement, the State suggests that any computer search in this case should be limited to monitoring whether Anderson is having any communications with minors and "accordingly limited to websites and apps that facilitate such communication." The State also concedes that websites like those for banks should be excluded.[49]

Accordingly, we remand Special Condition of Probation No. 9 to the superior court so that it may more narrowly tailor the provision requiring Anderson to

---

[48]   According to the presentence report, in July 2013 (prior to the start of Anderson's sexual relationship with K.H.), the school discovered a series of emails between Anderson and K.H. Some of the messages were school-related, but as time progressed, the emails became increasingly personal, including nicknames for one another. K.H. informed the school at that time that no sexual contact had occurred nor sexual photographs exchanged. The school district issued a written reprimand to Anderson, advising him that the "inappropriate behavior must stop."

[49]   In the superior court, the prosecutor argued that banking records could provide information about the purchase of illicit materials. But on appeal, the State concedes that there were no allegations that Anderson engaged in that type of conduct in this case, and thus, that such a restriction has an insufficient nexus to his offense.

provide his passwords and access codes to the specific object of this condition — monitoring communications with minors.[50]

Third, Anderson challenges Special Condition of Probation No. 12, which prohibits him from knowingly having contact with a person under eighteen years old, unless in the immediate presence of a pre-approved adult who knows the circumstances of his crime. Anderson argues that, since K.H. was fifteen years old at the time of his offense, the age limit for this condition should be sixteen — the general age of consent in Alaska — rather than eighteen, and that the court failed to consider this less restrictive alternative.

The State concedes that, upon Anderson's objection in the superior court, the court left the condition unchanged but did not make findings as to why the condition was the least restrictive means of protecting the public and promoting Anderson's rehabilitation. The State proposes that, on remand, the court amend this condition to restrict Anderson from "knowingly hav[ing] contact with a person under eighteen (18) years old over which he holds a position of authority, or any person under sixteen (16) years old," unless in the immediate presence of a pre-approved adult. Because this appeal was filed as a sentence appeal under Appellate Rule 215, Anderson was not entitled to file a reply brief and has not had an opportunity to respond to the State's specific proposal.[51] We remand this condition for further consideration in light of the State's proposed language.

---

[50] *See Galindo v. State*, 481 P.3d 686, 691 (Alaska App. 2021) (recognizing that when a probation condition implicates a defendant's constitutional rights, a court must apply special scrutiny to ensure that the condition is "narrowly tailored to avoid unnecessary interference with the constitutional right at issue" and "affirmatively consider and have good reason for rejecting lesser restrictions") (first quoting *Glasgow v. State*, 355 P.3d 597, 600 (Alaska App. 2015); and then quoting *Peratrovich v. State*, 903 P.2d 1071, 1079 (Alaska App. 1995)); *see also Simants v. State*, 329 P.3d 1033, 1038-39 (Alaska App. 2014) (same).

[51] *See* Alaska R. App. P. 215(g)(3).

Fourth, Anderson challenges Special Condition of Probation No. 17:

> The probationer shall not open or maintain an account with any internet provider, shall not participate in any social media accounts (examples include but are not limited to: dating sites, MySpace, Facebook, Instagram, Snapchat, Whatsapp, Twitter) and is expressly forbidden from accessing the internet from anyone else's account, without the prior written permission of the Probation Officer, recognizing that some degree of access to the internet is necessary to reintegration into society.

Anderson argues that making his internet access contingent on the probation officer's discretion unduly restricts his First Amendment rights. The State concedes that the condition is overbroad and must be further tailored.

After Anderson's sentencing, we addressed the propriety of a similar internet restriction in *Dalton v. State*.[52] In *Dalton*, we found that a complete internet ban, subject only to the unconstrained discretion of a probation officer, unduly restricted the defendant's liberty, and we encouraged the trial court on remand to consider less restrictive alternatives to limit the defendant's internet access in light of the "growing necessity of internet access for full participation in modern society, and for the rehabilitation of offenders."[53] Although we had previously affirmed such conditions,[54] we recognized that dependence on the internet in daily life had grown considerably in the decade since those decisions, and what had previously been a substantial inconvenience, was now "an almost total hindrance to reentry into modern society and meaningful participation in public discourse."[55] We also noted that the internet had

---

[52] *Dalton v. State*, 477 P.3d 650, 652-56 (Alaska App. 2020).

[53] *Id.* at 654-56.

[54] *See, e.g.*, *Diorec v. State*, 295 P.3d 409 (Alaska App. 2013); *Dunder v. State*, 2009 WL 1607917 (Alaska App. June 10, 2009) (unpublished).

[55] *Dalton*, 477 P.3d at 655.

played less of a role in Dalton's offense than it had in the offenses addressed in our prior decisions, and we directed the court on remand to resume its consideration of less restrictive alternatives, including the possibility of allowing Dalton to open and maintain a single internet account, which would be subject to warrantless searches and probation officer monitoring.[56]

The State recognizes that Anderson's use of the internet in this case was even more attenuated than in *Dalton*. Anderson used his work email — which was already subject to monitoring — to communicate inappropriately with K.H. over the summer, prior to initiating a sexual relationship with her. The State notes that the court attempted to narrow the condition by adding a provision regarding the importance of internet access — *i.e.*, "recognizing that some degree of access to the internet is necessary to reintegration into society." But the State nonetheless agrees that the court did not make sufficient findings to justify this condition as the least restrictive means of promoting Anderson's rehabilitation.

We therefore remand this condition for reconsideration in light of our decision in *Dalton*. The court should consider whether, and to what extent, an internet restriction is required in this case, given the facts of this case and Anderson's rehabilitation needs. We note that Anderson's other probation conditions already prohibit him from contacting minors and from possessing certain sexually explicit materials involving minors, and allow the probation officer to search his computer, electronic devices, residence, or vehicle for this prohibited material.

Finally, Anderson argues that Special Condition of Probation No. 4 — which provides that any recommended sex offender treatment "may include physiological and/or psychological testing, as well as other methods of ongoing assessment" — could be interpreted to include plethysmograph testing. We have

---

[56] *Id.* at 655-56.

previously held that plethysmograph testing implicates privacy and liberty interests and thus necessitates application of special scrutiny.[57]

In this case, the superior court specifically stated that it was not authorizing plethysmograph testing. Anderson argues that the written judgment should reflect this oral pronouncement.[58] The State agrees that the judgment should be amended to reflect the exclusion of plethysmograph testing.

As a general matter, if Anderson believed the judgment was unclear, he could have moved to amend the judgment in the superior court to reflect the oral pronouncement of sentence. But since the court clearly intended to exclude plethysmograph testing from Condition No. 4, and because we are remanding this case in any event, we direct the court on remand to amend the judgment to expressly reflect the exclusion of plethysmograph testing.

*Conclusion*

We REMAND this case to the superior court for reconsideration of Special Conditions of Probation Nos. 4, 9, 12, and 17, consistent with this opinion. We otherwise AFFIRM the judgment of the superior court.

---

[57] *Galindo v. State*, 481 P.3d 686, 691 (Alaska App. 2021).

[58] *Cf. Graybill v. State*, 822 P.2d 1386, 1388 (Alaska App. 1991) ("Where . . . a conflict exists between an orally imposed sentence and a subsequently issued written judgment, it is well settled that the oral pronouncement of a sentence must govern.").